Sara C. HACKETT, Plaintiff,

v.

CONTINENTAL CAN CO., National Association of Investment Clubs, Robert L. Gottshalk and Leonard P. Mauceli, Defendants.

No. 76 C 291.

United States District Court, E. D. New York.

July 30, 1981.

Julien Schlesinger & Finz, P. C., New York City, for plaintiff by Stuart A. Schlesinger, David Jaroslawicz, New York City.

Flanagan, Kelly, Ronan, Spollen & Stewart, Greenlawn, N. Y., for defendant Gottshalk by Joseph P. Ronan, Greenlawn, N. Y.

W. Gerard Asher, Huntington, N. Y., for defendant Mauceli.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

In this action charging securities fraud,[1] the remaining defendants Gottshalk and Mauceli[2] have moved for summary judgment dismissing the action against them, following extensive discovery. In the hands of a more creative writer, the facts disclosed contain all the ingredients for a story in the O. Henry genre.

Plaintiff is a widow who received a modest inheritance from her late husband. Her son, Henry Hackett, Jr., who shared with his sister the balance of the estate, was the executor. A graduate of the University of Pennsylvania's Wharton School of Business, who later trained as a banker with Morgan Guaranty Company, the son became an account executive and later a branch office manager with one of the nation's leading stock brokerage firms. It was his investment advice to his mother that led to this lawsuit to recover the money she lost as the result of a dead man's fraud.

Events began in early 1972 with the appearance on the scene of one Thomas R. Spillman, now deceased by his own hand. Spillman, who apparently was employed by the former defendant Continental Can Company, made the acquaintance of defendant Gottshalk, then employed as a music teacher in a Huntington, Long Island, high school. According to Gottshalk, Spillman produced various documents corrobo-

---

1. Allegedly violated are § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5; § 20(a), 15 U.S.C. § 78t; and the Investment Advisers Act, 15 U.S.C. § 80b–6.

2. Originally the complaint charged two other defendants with liability, but the action against Continental Can Company was earlier dismissed for lack of scienter, and the defendant National Association of Investment Clubs was discontinued by stipulation of the parties.

rating his official connection with the Third Avenue Investment Club ("TAIC") and the latter's membership in the National Association of Investment Clubs ("NAIC") headquartered in Detroit, Michigan.[3] Spillman told Gottshalk that TAIC, which started investing in 1969, had assets of $1,500,000; that its members included highly placed executives of Continental Can Company; and that the board of directors had decided to attempt a test market program to prove that TAIC expertise could be used to teach small investment clubs how to be as successful as TAIC.

Impressed with Spillman's idea of developing a "how to" kit as an educational package, Gottshalk assembled several teaching associates to meet with Spillman. Included in the group was the co-defendant Mauceli, then a sales manager of Duplex Products, Inc., a manufacturer of business forms. Spillman outlined a plan for the formation of test clubs, structured as partnerships like TAIC, which would continue in a satellite relationship with TAIC, and deposit investment funds in the latter's bank account at Chemical Bank (to which Spillman, as TAIC treasurer, had access). Under the plan, each club was to define its own investment goals and determine the amount of the suggested weekly contribution necessary to attain them. As an incentive for new investors, all test club members would receive for each dollar they contributed one TAIC certificate representing a 1971 year-end value of $1.36. The club founders were to receive for their efforts a 20% commission on all money contributed by their club members, and Gottshalk was to receive 10% of all money sent to him by club leaders for forwarding to TAIC. These latter payments were to come out of a special fund TAIC had set aside to finance the test market program.

In March 1972 eight test clubs were formed, including the Long Island Investment Club ("LIIC") founded by Mauceli. After an initial investment of $5.00 in LIIC, Gottshalk contributed about $5,500 over the course of a year. Mauceli invested about $21,900. To make his investment in LIIC, Mauceli had to liquidate securities he already held. His stockbroker was plaintiff's son Harry, whom he called in order to effect the sale. At that time they discussed Mauceli's reason for selling his stock and Hackett expressed interest in learning more about LIIC. Shortly thereafter they met at Hackett's home where Mauceli told him everything he had been told by Spillman and Gottshalk and gave him the booklet he had received, which described the test market program in detail and which Hackett understood came from Spillman.[4]

In May 1972, following another conversation with Mauceli, Hackett advised his mother to begin with a $2,000 investment in LIIC, for which she received 2,000 shares in the form of TAIC certificates. At year end those shares had increased in value to $1.43 a share. At that time she cashed in 8,000 of the 39,000 shares she then held and received a check for $11,840. This good fortune did not last. In July 1973 Gottshalk learned through another test club leader, Dominic Gruosso, that Spillman was using the money received from the clubs to pay off personal debts and that there really was no TAIC. Confronted with this, Spillman admitted his fraud and subsequently committed suicide. As a consequence of Spillman's fraud, plaintiff lost some $37,000, Gottshalk lost his entire investment of $5,500, and Mauceli lost $16,600, having previously withdrawn some $5,300 in August 1972.

■ Summary judgment, which cuts off a party's right to a trial, may not be granted unless pleadings, affidavits, depositions or admissions, if any, "[s]how that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), F.R.Civ.P. In determining whether to grant a motion for summary judgment, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *American Manufacturers Mutual Insurance Co. v. American Broadcasting-*

---

3. Gottshalk Aff., Exhs. A–F.

4. Mauceli Aff., Exhs. 1–8.

*Paramount Theatres, Inc.*, 388 F.2d 272, 279 (2d Cir. 1967), *quoted in Securities Exchange Commission v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978). "The very mission of the summary judgment procedure [however] is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Adv.Com. Note to Proposed Amendments to Rule 56(e), 31 F.R.D. 648 (1962). Hence, a party may not retreat to "the mere allegations or denials of his pleading" in face of "a motion for summary judgment made and supported as provided in ... [Rule 56]." Rule 56(e), F.R.Civ.P.

▬ At the outset, it is clear that defendants are entitled to summary judgment on plaintiff's claim of a violation of the Investment Advisers' Act, since the Supreme Court in *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979), has ruled that 15 U.S.C. § 80b–6, on which plaintiff relies, does not afford an implied private cause of action for damages. In addition, despite ample discovery of Gottshalk and Mauceli, no facts were adduced to create any triable issue with respect to plaintiff's bare allegation that these defendants were "control persons" of TAIC under 15 U.S.C. § 78t. The sole person in control of the fraudulent scheme involved was obviously Spillman, who conceived it and placed it in operation. These defendants were duped as much by Spillman as were his other victims, including plaintiff. In no sense, on the facts revealed in discovery, can they be viewed as persons "who are in some meaningful sense culpable participants in the fraud perpetrated" by Spillman. See *Lanza v. Drexel Co.*, 479 F.2d 1277, 1299 (2d Cir. 1973) (*en banc*).

▬ There is simply no factual support for the allegation that Gottshalk and Mauceli "contacted the plaintiff ... and induced [her] to entrust them with her funds" for investment. Complaint, par. 9. By plaintiff's admission she relied solely upon her son's advice and "adhered to his judgment, being a businessman" that "my investments would be well assured." Dep. 7–8. It was her son who drew 31 checks, as executor of his father's estate, between May 24 and December 20, 1972, representing almost weekly contributions to LIIC of $1,000 or $2,000, for a total of $39,000.[5] Admittedly he did so without consulting his firm's vast research resources or making any independent inquiry about Spillman or TAIC. Dep. 30–32. Like Gottshalk and Mauceli, he relied without question on Spillman's monthly reports on the performance of the TAIC stock portfolio despite his own prior experience in counseling an investment club for his employer.

▬ There being neither knowing nor reckless behavior on the part of defendants, the scienter requisite for liability under Rule 10b–5 has not been established. See *Ernst & Ernst Co. v. Hochfelder*, 425 U.S. 185, 194, 96 S.Ct. 1375, 1381, 47 L.Ed.2d 668 (1976); *Rolf v. Blyth, Eastman Dillon & Co.*, 570 F.2d 38, 44–46 (2d Cir.), *cert. denied*, 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 698 (1978).

Accordingly, defendants' motion for summary judgment dismissing the complaint is granted.

SO ORDERED.

▬▬▬▬▬

---

5. Mauceli Aff., Exhs. 9, 11. Defendants assert that these checks prove that the estate of Harry Hackett, Sr., and not his widow, is the real party in interest; that the widow's interest in the estate is limited by the decedent's will to a life interest in a marital deduction trust (Aff. of W. Gerard Asher, Esq., dated January 11, 1980); and that the son placed the investments in his mother's name to conceal his violation of his employer's prohibition against employee participation in investment clubs. In view of the disposition of this case it is unnecessary to consider such a contention.