**Murray SCHLANGER, Plaintiff,**

v.

**FOUR–PHASE SYSTEMS INC., Lee L. Boysel, Glen McLoughlin and R. Frederick Hodder, Defendants.**

**No. 81 Civ. 7798–CLB.**

United States District Court, S.D. New York.

Nov. 10, 1982.

Kreindler & Kreindler, New York City, for plaintiff Schlanger.

Kirkland & Ellis, Chicago, Ill., for defendant Four-Phase.

Cooley, Godward, Castro, Huddleston & Tatum, San Francisco, Cal., for defendants Boysel, McLaughlin and Hodder.

## MEMORANDUM AND ORDER

BRIEANT, District Judge.

By a paper docketed August 6, 1982 in this lawsuit founded on the well familiar provisions of Rule 10b–5, plaintiff has renewed its motion for class action determination dated April 1, 1982, which was, by reason of this Court's Order dated June 23, 1982, held in abeyance pending the filing of an amended complaint.

At the same time, by motion docketed August 31, 1982, defendants moved for an order dismissing the amended complaint pursuant to Rule 12(b)(6), F.R.Civ.P. for failure to state a claim, or alternatively, pursuant to Rule 12(f), F.R.Civ.P., striking out the allegations of fraud on the market reliance. The motions were heard together on October 13, 1982 and fully submitted as of October 25, 1982.

The amended class action complaint herein was filed July 16, 1982. According to the amended complaint, as amplified at the hearing on these motions, defendant Four-Phase is the issuer of common stock which was at the relevant point in time, listed and traded on the New York Stock Exchange. The individual defendants are former officers and/or directors of the issuer.

Plaintiff seeks to sue as representative of a class which includes all persons other than defendants who owned Four-Phase stock immediately prior to the December 2, 1981 public announcement by the company quoted below and alleged in ¶ 12 of the amended complaint, and who sold the stock at any time prior to the subsequent announcement on December 10, 1981 of a proposed merger by the issuer with Motorola, Inc. Familiarity with this Court's prior Memorandum Endorsement docketed June 24, 1982 is assumed.

The amended complaint shows that on November 27, November 30 and December 1, 1981, the three trading days before December 2, 1981, Four-Phase stock closed on the New York Stock Exchange at prices of $28., 27⅝ths and 28¾ths on share volume of 27,500, 18,000 and 39,800 shares, respectively. On December 2, 1982 there was, it is said, a "steep and sudden rise in the market price of and the trading volume in the Company's common stock." The price rose to 34½ on a volume of 302,000 shares.

On December 2, 1981, defendants issued an announcement (the "Hodder Statement"), disseminated to the public over the Dow-Jones ticker reading as follows:

"R. Frederick Hodder, Treasurer of Four-Phase Systems said the Company is not aware of any corporate developments which would affect the market for its stock."

Plaintiff claims the statement was false and also that it contained a material omission. Plaintiff would have the Court assume for the motion, and intends to prove at trial, that word of the pending merger had leaked, causing a reaction in volume of shares sold, and market price. Of course, the Hodder Statement, like many statements, may be characterized alternatively as false and misleading, or as incomplete, having a misleading omission. The Statement is arguably false, but it is also mis-

leading in that it fails to "state a material fact necessary ... to make the statement made, in light of the circumstances under which [it was] made, not misleading" within the familiar rubric of Rule 10b–5, *e.g.*, "however Mr. Hodder also said that he and other representatives of the issuer were engaged in active negotiations looking toward a merger with a large publicly held corporation and were drafting papers to effect such a transaction, although final agreement had not been reached."

Plaintiff pleads that the market reacted both as to price and volume, adversely to the stock, as a result of the Hodder Statement. On December 8th the New York Stock Exchange halted trading, prior to which the stock closed at 32⅞ths on a volume of 103,200 shares. On December 10, 1982, while trading was halted, the company announced that it had entered into a merger agreement with Motorola, Inc. whereby Motorola would acquire all Four-Phase stock for Motorola stock, valued at $45. per share. On December 11, 1981, when trading resumed, the closing price was 39½ on a volume of 527,900 shares.

Plaintiff alleges, and it certainly may be inferred, that the "steep and sudden rise in the market price of and trading volume in Four-Phase stock on December 2 ... was a result of a leakage into the marketplace of information relating to the merger negotiations between Four-Phase and Motorola." (Amended Complaint, ¶ 16). Accordingly, plaintiff pleads that the December 2nd Statement by the company was materially false and misleading, that the issuer knew of the merger under discussion with Motorola, and knew that the possibility of the merger was a corporate development which could and in fact did affect the market in the stock once news of that prospect leaked, as it apparently did.

Plaintiff alleges that the false and misleading Hodder Statement artificially depressed the market price, and thereby affected the "intergrity" (sic) of the market (Amended Complaint, ¶ 19). Plaintiff also alleges that in reliance on the December 2nd Statement *and* in reliance on the integ-

rity of the market, and in particular reliance on his assumption or belief that the market price of Four-Phase stock reflected accurate public information disseminated by Four-Phase, he sold his stock during the class period, suffering a lost benefit which he would have enjoyed had he awaited the merger. Plaintiff also alleges that in reliance on the December 2nd Statement, and/or the integrity of the market, members of the proposed class must have done the same thing.

While defendants' motion to dismiss or to strike seeks affirmative relief, essentially the purpose of this motion is to defeat the companion motion of plaintiff for class certification. Accordingly, consideration of defendants' arguments on this motion at this point may be helpful.

Essentially, plaintiff argues that the amended complaint is legally deficient because plaintiff has persisted in pursuing a "fraud on the market" theory, and at the same time has included in his complaint specific allegations of direct reliance by himself on the false statement (or misleading omission) which defendants released over the Dow-Jones ticker on December 2nd.

■ This Court does not perceive the claimed inconsistencies of these allegations as being fatal to the complaint, or fatal to the motion to declare a class. Defendants concede (Mem. docketed Aug. 31, 1982, p. 2) that had plaintiff merely alleged direct reliance, they would "not contest the adequacy of his pleading."

■ The loss or damage which this plaintiff essentially seeks to recover does not arise out of the *purchase* of stock; it arises rather out of the precipitous *sale* of the stock previously purchased. Plaintiff's position essentially is that if the Statement had been truthful, or if there had been no Statement, he and other reasonably prudent investors who made sales of stock during the period between the date of the Hodder Statement and the ultimate revelation that a merger was forthcoming with Motorola, would not have sold at the time and at the

prices they did, but would have retained the stock until they could receive the benefit of the Motorola merger. This allegation or factual contention satisfies Rule 10b–5.

Reliance and/or causation are amply present. In *Wilson v. Comtech Telecommunications Corp.,* 648 F.2d 88, 92 (2d Cir. 1981), the Court of Appeals explained that "the element of reliance serves to restrict the potentially limitless thrust of Rule 10b–5 to those situations in which there exist *causation in fact* between the defendants' act and the plaintiff's injury." (Citations omitted, emphasis added).

The trier of fact may find in this case that a reasonable investor would not have acted as he did had he known of the material deception or omission. Insofar as some traders act in direct reliance on the fraud, all traders in an affected security may argue to the trier of the fact that they are damaged by the impact of the deception on the decisionmaking procedures of the traders who acted in direct reliance, which in turn impacts on price. In *Affiliated Ute Citizens v. United States,* 406 U.S. 128, 153–54, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972), the source of most of the learning on causation in misleading omission cases, the Supreme Court held that, "All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of [his] decision."

Plaintiff here argues that he and every seller of Four-Phase stock during the class period, likewise relied on the integrity of the market, and the assumption that the market is not being manipulated as a result of anybody's false statement or misleading omission. It is an article of faith in federal securities law that the totality of the market responds to the measured judgment of buyers and sellers evaluating all public information relating to the security in which they are trading. Obviously, some of the sellers during the class period heard of the Statement of December 2, 1981, now alleged to be false or incomplete, and relied on it to their detriment in making a sale. Others may have made sales, without hearing of the false or incomplete Statement of Four-Phase's Treasurer of December 2, 1981, relying solely on the integrity of the market. Perhaps there are some sellers who did not rely on anything, although it is hard to imagine that there ever is a buyer or seller who does not rely on market integrity. Who would knowingly roll the dice in a crooked crap game?

■ The Court perceives no inconsistency and no atypicality in reliance on *both* the integrity of the market and the truth of the Hodder Statement by some sellers, and reliance merely on the integrity of the market, with no knowledge of the Hodder Statement, on the part of other sellers. In any securities class action, reliance or causation must be pleaded and proved, and where class or liability issues predominate over individual issues, as they do here, class action status can be declared in a Rule 10b–5 case even where individual members of the class may have to prove their reliance, and their damages, separately, at the end of the case, when and if liability is adjudicated. The Court does not regard the pleading as so inconsistent as to require an order striking out the alternative allegation.

■ In effect, reliance here means causation. Causation is an essential element of all tort cases, and claims under 10b–5 should be no exception. Where a buyer or seller of securities alters his decisionmaking because of a material falsehood imparted to him, this reliance provides the causal link between the defendants' wrongful act, and the loss suffered by the plaintiff. Obviously, nobody could ever "rely" on a misleading omission.

■ The Court believes that where an injured party did not rely upon affirmative fraudulent statements because he did not read or hear the statements, but the evidence at trial demonstrates with reasonable certainty that the fraudulent statements so permeated and polluted the market as to distort the market price by distorting the decisionmaking process by which others determined to sell, damages may be recov-

ered. A misleading omission stands on no different ground.

In this Court's view, the facts pleaded in the instant case are analogous to those in *Sirota v. Solitron Devices, Inc.,* 673 F.2d 566 (2d Cir.1982), where a defendant issuer intentionally disseminated inflated earnings statements, using fraudulent invoices to puff the gross sales. Upon expert testimony the trier of the facts in *Sirota* was permitted to find that the market was polluted, damaging those who bought stock in Solitron before the fraud was disclosed, and paid higher prices than they would have paid. The Court held (*id.,* p. 574):

> "Without the overstatements, not only would the earnings per share have been less during the years 1966 through 1970, but the gradient of earnings growth would have been flatter. Indeed in 1970 there would have been a decline in earnings. There was expert testimony before the jury about the effect that the overstatement of earnings and the gradient of earnings growth have on stock prices generally."

Defendants' motion is denied. Plaintiff's motion to declare a class is granted. Plaintiff shall submit on ten (10) days notice or on waiver of notice, a proposed order declaring the class together with a proposed notice to class members granting the opportunity to opt out of the lawsuit and containing such provisions for notice as may be appropriate. Such proposed order and notice shall be presented to the Court no later than December 16, 1982.

Counsel shall also meet and confer with each other to establish a discovery schedule which shall permit the prompt trial of the lawsuit and shall proceed forthwith to carry out their schedule. A pre-trial and status report conference shall be held before me on December 29, 1982 at 9:30 A.M. in Courtroom 705.

So Ordered.