**INDEX FUND, INC., Plaintiff,**

**v.**

**Robert R. HAGOPIAN, John Peter Galanis, Akiyoshi Yamada, Takara Partners, Louise Yamada, Louise Yamada, Inc., Armstrong Investors S.A., Armstrong Capital S.A., Pericles Constantinou, Provident Securities, Inc., First National City Trust Company (Bahamas) Ltd., First National City Bank, Defendants.**

**No. 73 Civ. 2665 (CHT).**

United States District Court,
S.D. New York.

Feb. 6, 1985.

Charles E. McGuinness, New York City, for plaintiff.

Shearman & Sterling, New York City, for defendants Citibank, N.A., and Cititrust (Bahamas) Ltd.; Werner L. Polak, New York City, of counsel.

## OPINION

TENNEY, District Judge.

The plaintiff, Index Fund, Inc. ("Index Fund"), began this action in 1973 against various parties including First National City Trust Company (Bahamas) Limited ("Cititrust") and First National City Bank ("Citibank"). The plaintiff alleges that Cititrust and Citibank violated the federal securities laws and common law principles of fraud and fiduciary duty by causing the plaintiff to purchase stocks that were

worthless or were sold at inflated prices.[1] The plaintiff is seeking damages of $1,010,-151.

Cititrust and Citibank ("defendants") now move for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56, or alternatively, for judgment on the pleadings under Rule 12(c) for failure to state a claim. The plaintiff has made a cross-motion for summary judgment and has moved for leave to amend the complaint under Rule 15.

The plaintiff's motion for leave to amend the complaint is granted to the extent set forth below, but the plaintiff's cross-motion for summary judgment is denied. The defendant's motion for summary judgment or to dismiss on the pleadings is granted in part and denied in part. The motion is denied insofar as the plaintiff alleges that the defendants are secondarily liable under the securities laws and the common law, as will be discussed hereinafter. In all other respects, the motion is granted.

## BACKGROUND

The history of this case is set forth at length in the Court's previous Opinion, 417 F.Supp. 738 (S.D.N.Y.1976), and will not be repeated here. A brief recital of the facts will suffice.

Essentially, the complaint alleges that in 1970—between June and October—the plaintiff purchased certain securities that

were worthless or overvalued, and consequently suffered a loss of $1,010,151. According to the plaintiff, the defendants' liability is based on the defendants' relationship with the Armstrong Fund ("Armstrong"); Armstrong is an offshore mutual fund which, allegedly, caused the plaintiff's loss by means of market manipulation and bribery.[2] Cititrust, a wholly-owned subsidiary of Citibank, was Armstrong's trustee.

The plaintiff claims that Cititrust and Citibank failed to exercise proper supervision and control over Armstrong and Armstrong's investment adviser, Everest Management Corporation ("Everest").[3] The plaintiff alleges that Armstrong—acting through Everest—(1) manipulated the market, thereby causing certain securities purchased by the plaintiff to be worthless or overpriced, and (2) fraudulently induced the plaintiff to purchase the securities in question from Armstrong and others by giving the plaintiff's employee, Robert R. Hagopian ("Hagopian"), a bribe of approximately $500,000.[4]

The defendants have moved for summary judgment and for judgment on the pleadings. In response, the plaintiff has made a cross-motion for summary judgment and, pursuant to Rule 15(a), has moved for leave to amend the complaint to hold the defendants—Cititrust and Citibank—liable for the fraud perpetrated by Armstrong and Everest.

---

**1.** Specifically, the complaint alleges liability under Sections 17(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77q(a) (1982); Sections 10 and 15 of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78j, 78o (1982); Securities and Exchange Commission Rule 10b–5, 17 C.F.R. § 240.10b–5 (1984); Sections 17(e)(1) and 36 of the Investment Company Act ("Investment Company Act"), 15 U.S.C. §§ 80a–17(e)(1), 80a–35 (1982); Section 206 of the Investment Advisers Act ("Investment Advisers Act"), 15 U.S.C. § 80b–6 (1982); and the common law.

In addition, the plaintiff has made a motion for leave to amend the complaint to allege liability under Sections 12(2) and 15 of the Securities Act, 15 U.S.C. §§ 77l, 77o (1982); and Section 20(a) of the Securities Exchange Act, 15 U.S.C. § 78t (1982).

**2.** Armstrong, which was comprised of Armstrong Capital, S.A. and Armstrong Investors, S.A., invested in United States securities on behalf of foreign investors. Armstrong Capital, S.A. served as the conduit for investments in the United States. The Armstrong Fund was formed in 1969.

**3.** As investment adviser to Armstrong, Everest managed, and had complete control of Armstrong's investment portfolio. The key figures at Everest were John Peter Galanis ("Galanis") and Akiyoshi Yamada ("Yamada"). Both were officers of Everest and had been the principal promoters of Armstrong.

**4.** Hagopian was the president of Index Fund at the time, and he was the president and chairman of the plaintiff's investment adviser, Meridian Management Corporation.

## DISCUSSION

### Amending the Complaint

■ Leave to amend a complaint should be freely given, absent bad faith, undue delay, or undue prejudice to the opposing party. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). The pleading rules should be applied liberally, rather than narrowly. *Id.* Leave to amend should be granted "if the plaintiff has at least colorable grounds for relief...." *S.S. Silberblatt, Inc. v. East Harlem Pilot Block*, 608 F.2d 28, 42 (2d Cir.1979). In determining whether an amendment is justified, the court "should normally focus on the resultant prejudice to [the] defendant." *Middle Atlantic Utilities Co. v. S.M.W. Dev. Corp.*, 392 F.2d 380, 384 (2d Cir.1968).

■ Despite the defendants' argument that the plaintiff should not be permitted to amend the complaint in the case at bar, the defendants have made no showing that they would be unduly prejudiced by the proposed amendment. Essentially, the defendants had notice that they could be charged with secondary liability for the acts of Armstrong and Everest. The plaintiff's claims concerning secondary liability are based on the same facts and circumstances as those outlined in the original complaint. *See* Rule 15(c); 6 C. Wright & A. Miller, Federal Practice and Procedure § 1497, at 490 (1983). All of the elements of secondary liability were effectively set forth in the original complaint, even though the plaintiff did not specifically denominate the theory or statutory basis of secondary liability. In addition, both the plaintiff and the defendants addressed the question of secondary liability at length and in detail in their briefs for the instant motion.

It appears from the record that the plaintiff's claims against Cititrust and Citibank for secondary liability are at least colorable, and there is no suggestion that the plaintiff has acted in bad faith or is guilty of undue delay in seeking to amend the complaint.

The plaintiff's request to amend the complaint is therefore granted. The plaintiff may amend the complaint to the extent necessary to allege that Cititrust and Citibank are secondarily liable under the doctrine of aiding and abetting, and the doctrine of controlling parties.[5]

Moreover, for the purpose of the current motion, the Court will consider the complaint as though it were already amended. *See* 10A C. Wright and A. Miller, *supra*, § 2722 at 47–48 (1983) ("[W]hen plaintiff's motion to amend the complaint and defendant's motion for summary judgment are presented together, the court may consider the [summary judgment motion] as [being] addressed to the complaint in the form in which it is sought to be amended."); *accord Marbury Management, Inc. v. Kohn*, 629 F.2d 705, 711–12 (2d Cir.), *cert. denied sub nom. Wood Walker & Co. v. Marbury Management, Inc.*, 449 U.S. 1011, 101 S.Ct. 566, 66 L.Ed.2d 469 (1980). Because the parties have thoroughly briefed the question of secondary liability, the defendants will not be prejudiced as a result of the Court's treating the complaint as though it were already amended.

### Judgment on the Pleadings

The defendants have moved for summary judgment under Rule 56, and for judgment on the pleadings—for failure to state a claim—under Rule 12(c).[6] Where outside

---

**5.** Accordingly, the plaintiff may file an amended complaint within 30 days of the date of this Opinion. The defendants may file an amended answer within 30 days after the filing of the amended complaint.

The plaintiff may amend the complaint to allege that Cititrust and Citibank are secondarily liable under Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b) (1982) and Rule 10b–5, 17 C.F.R. § 240.10b–5 (1984); Section 20(a) of the Securities Exchange Act, 15

U.S.C. § 78t (1982); Sections 12(2), 15 and 17(a) of the Securities Act, 15 U.S.C. §§ 77*l*, 77*o*, 77q (1982); and under the common law. *See* Plaintiff's Notice of Cross-Motion, dated July 14, 1983, at 1.

**6.** The defendants moved for judgment on the pleadings with respect to all causes of action asserted by the plaintiff in the complaint, except for the plaintiff's cause of action for common law fraud.

material is presented to the court on a motion to dismiss under Rule 12(c), the motion should be treated as one for summary judgment, and the court should proceed under Rule 56. *See Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984); *Slevin v. Pedersen Assoc., Inc.*, 540 F.Supp. 437, 438 n. 2 (S.D.N.Y.1982); 10 C. Wright and A. Miller, *supra*, § 2713 at 599–600 (1983).

In the case at bar, the parties have submitted affidavits, interrogatories, and substantiating documentation in support of the current motions. Because the Court has considered all of the material submitted, including the matter presented which is outside of the pleadings, the defendants' entire motion will be treated as one for summary judgment.

*Summary Judgment*

Summary judgment, which cuts off the right to trial, may be granted only if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c); *see generally* 6 J. Moore, W. Taggart and J. Wicker, Moore's Federal Practice ¶ 56.15 [1.–0] (2d ed. 1983). The court will not try issues of fact on a motion for summary judgment, but, rather, will merely determine whether there are issues of fact that need to be tried. *See Heyman v. Commerce and Indus. Ins. Co.*, 524 F.2d 1317, 1319–20 (2d Cir.1975).

It is well settled that summary judgment should not be granted unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances. Neither should

summary judgment be granted if the evidence is such that conflicting inferences may be drawn therefrom, or if reasonable men might reach different conclusions.

*Phoenix Sav. and Loan, Inc. v. Aetna Casualty and Sur. Co.*, 381 F.2d 245, 249 (4th Cir.1967).

The party moving for summary judgment has the burden of showing that there are no material facts in dispute, *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970), and the court will resolve all ambiguities and draw all reasonable inferences in favor of the party opposing the motion. *Heyman v. Commerce*, 524 F.2d at 1319–20. It should be noted that "[i]ssues of motive and intent are usually inappropriate for disposition on summary judgment." *Wechsler v. Steinberg*, 733 F.2d 1054, 1058 (2d Cir.1984). Summary judgment, however, will not be denied on the basis of mere conclusory allegations made without factual support. *See Project Release v. Prevost*, 722 F.2d 960, 968 (2d Cir.1983). Concrete particulars must be set forth in opposition to the motion. *See SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir.1978).

A. *Primary Liability*

The plaintiff's complaint alleges that the defendants are liable as principals under §§ 10(b) and 15(c) of the Securities Exchange Act, §§ 12(2) and 17(a) of the Securities Act, and under the common law.[7] The plaintiff, however, has failed to allege any facts that would give rise to an inference that either Cititrust or Citibank was a direct participant in manipulating the market or bribing Hagopian.[8] In fact, plain-

---

The defendants also moved for summary judgment on all of the plaintiff's claims, except for the three claims that concern the Investment Advisers Act and the Investment Company Act. On those three claims, the defendants moved only for judgment on the pleadings. As discussed hereinafter, however, the plaintiff has no standing to bring an action against Cititrust or Citibank under either the Investment Company Act or the Investment Advisers Act. Therefore, it does not matter whether the motion to dis-

miss those three claims is treated as a motion for summary judgment or a motion for judgment on the pleadings; those claims must be dismissed as a matter of law under either Rule 12 or Rule 56.

7. See *infra* note 1.

8. It should be noted that in the complaint the plaintiff asserted claims against all of the defendants named in the action. Allegations con-

tiff's counsel stated in an affidavit that the plaintiff had "not charged ... Citibank or Cititrust with having sold any securities to plaintiff or having misrepresented any facts regarding the sale and purchase of those securities which were the subject of the securities manipulations of Galanis and Yamada." Rebuttal Affidavit of Charles E. McGuinness, sworn to August 31, 1983, ¶ 44.

The record indicates that neither Cititrust, nor Citibank, engaged in any independent fraudulent conduct; thus, neither defendant can be held primarily liable for the plaintiff's loss. *See Savino v. E.F. Hutton & Co.*, 507 F.Supp. 1225, 1241–42 (S.D.N.Y.1981). At most, they may be found secondarily liable under the doctrine of aiding and abetting, or controlling parties. *See Lanza v. Drexel & Co.*, 479 F.2d 1277, 1289 (2d Cir.1973) (en banc); *Hackett v. Continental Can Co.*, 518 F.Supp. 1281, 1284 (E.D.N.Y.1981). Accordingly, summary judgment is granted in favor of Cititrust and Citibank on each of the plaintiff's claims, insofar as the claims pertain to primary liability under the securities laws and the common law.

### B. The Investment Advisers Act, and the Investment Company Act

■ The plaintiff asserts in its complaint that the defendants are liable under § 206 of the Investment Advisers Act. The Supreme Court, however, has ruled that there is no private cause of action under § 206. *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 24, 100 S.Ct. 242, 249, 62 L.Ed.2d 146 (1979). The plaintiff's claim under § 206 is therefore dismissed.

■ The plaintiff also claims that the defendants are liable under §§ 17(e)(1) and 36 of the Investment Company Act. Section 17(e)(1) makes it unlawful for a person acting as an agent for an investment company to accept a bribe. Although the plain-

tiff's employee, Hagopian, accepted a bribe, he was not acting as an agent for either the defendants, or Everest, or Armstrong. Hagopian was acting on behalf of the plaintiff, Index Fund. Since Hagopian was not the defendants' agent, Cititrust and Citibank cannot be held liable under § 17 for Hagopian's acceptance of the bribe. Accordingly, the plaintiff's cause of action under this section is hereby dismissed.

The plaintiff's claims against Cititrust and Citibank under § 36 of the Investment Company Act must also be dismissed; the plaintiff is not within the group of investors that § 36 is intended to benefit.[9] Congress enacted the Investment Company Act, generally, and § 36 specifically, in order to regulate transactions between investment companies—such as mutual funds—and their investment advisers. *See Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 104 S.Ct. 831, 838–42, 78 L.Ed.2d 645 (1984). A mutual fund is generally only a shell; it is "a pool of assets consisting mostly of portfolio securities that belong to the individual investors holding shares in the fund." *Tannenbaum v. Zeller*, 552 F.2d 402, 405 (2d Cir.), *cert. denied sub nom. Eberstadt & Co. v. Tannenbaum*, 434 U.S. 934, 98 S.Ct. 421, 54 L.Ed.2d 293 (1977). Typically, the mutual fund is managed and supervised by its investment adviser. In the instant case, for example, Everest was acting as the investment adviser for Armstrong. Section 36 was intended to address problems that arise out of the unique relationship between an investment company and its investment adviser, and to "correct abuses of self-dealing which produced injury to the stockholders of investment companies." *United States v. Deutsch*, 451 F.2d 98, 108 (2d Cir.1971), *cert. denied*, 404 U.S. 1019, 92 S.Ct. 682, 30 L.Ed.2d 667 (1972).

cerning primary liability were not specifically or solely asserted against Cititrust and Citibank.

**9.** Here again, the plaintiff has simply alleged in its complaint that "the defendants" are liable under § 36. The plaintiff did not specify which

of the named defendants it is seeking to hold liable under this section. In terms of the current motion, the plaintiff did not specifically argue its claims under the Investment Company Act against Cititrust or Citibank.

▮ In the case at bar, the plaintiff was not among the group of investors that § 36 was intended to protect. The plaintiff was not a security holder of Armstrong and did not have the unique relationship with Everest or Armstrong that was contemplated by the statute. The plaintiff was not managed or supervised by Everest. Consequently, the plaintiff does not have standing to bring an action against Cititrust or Citibank under § 36, and the plaintiff's claim under this section is therefore dismissed.

### C. *Secondary Liability*

The basic elements of secondary liability—under the doctrine of aiding and abetting or the statutory doctrine of control[10]—are well established in this circuit. *See, e.g., Armstrong v. McAlpin,* 699 F.2d 79, 91 (2d Cir.1983); *Marbury Management v. Kohn,* 629 F.2d at 712–16; *IIT, An Int'l Inv. Trust v. Cornfeld,* 619 F.2d 909, 922 (2d Cir.1980); *Rolf v. Blyth, Eastman Dillon & Co., Inc.,* 570 F.2d 38, 47–48 (2d Cir.), *cert. denied,* 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 698 (1978); *Lanza v. Drexel,* 479 F.2d at 1299–1304.

▮ Three elements must be established in order to impose liability on a defendant as either an aider and abettor or a controlling party. The first two elements are the same under both theories of liability: (1) there must have been a violation of the securities laws by a primary party, and (2) the defendant must have had actual knowledge of the violation, or the defendant must have had a fiduciary relationship with the plaintiff and have acted recklessly.

▮ Under the controlling person doctrine, the plaintiff must also show that the defendant had the power to exercise control over the primary violator, based on a special relationship such as agency or stock ownership.

To establish aider and abetter liability, the plaintiff must show—as a third element—that the defendant rendered substantial assistance to the principal actor in effecting the primary violation.

### 1. *Securities Law Violation*

The plaintiff must first establish the existence of a securities law violation by a primary party. There is little doubt that the plaintiff's allegations, if true, would be sufficient to prove a primary violation in the instant case.

The plaintiff alleges that Everest—acting in its capacity as investment adviser for Armstrong—was the primary violator, and that Everest violated the securities laws by fraudulently inducing the plaintiff to purchase certain securities that were worthless or overpriced. The complaint alleges, first, that the plaintiff's employee, Hagopian, purchased the securities for the plaintiff because of a substantial bribe given to him by Everest. Second, the plaintiff claims that the securities in question were worthless or overpriced because Armstrong and Everest had fraudulently manipulated the market.

### (a) *In Pari Delicto Defense*

Fraudulent inducement to buy worthless or overpriced securities, if proven, would constitute a primary violation. The defendants, however, claim that because Hagopian accepted a bribe—and Hagopian was an employee and agent of the plaintiff—the plaintiff itself took part in the venture. The defendants argue that Index Fund is therefore barred from bringing suit on the fraudulent inducement claim.

This type of defense—an in pari delicto defense—is generally inappropriate in securities cases, and will not be recognized in the case at bar. *See Mallis v. Bankers Trust,* 615 F.2d 68, 75 (2d Cir.1980), *cert. denied,* 449 U.S. 1123, 101 S.Ct. 938, 67 L.Ed.2d 109 (1981); *Berner v. Lazzaro,* 730 F.2d 1319, 1321–24 (9th Cir.1984), *cert. granted sub nom. Bateman Eichler, Hill Richards, Inc. v. Berner,* — U.S. —,

---

**10.** *See* Section 20(a) of the Securities Exchange Act, 15 U.S.C. § 78t (1982) ("Section 20(a)"), and Section 15 of the Securities Act, 15 U.S.C. § 77*o* (1982) ("Section 15").

105 S.Ct. 776, 83 L.Ed.2d 772 (1985) (citing cases and commentaries).

The major objective of the securities laws is to prevent deceptive practices in the securities field, protect investors, and provide a means of redress if investors are deceived. *See SEC v. Capital Gains Research Bureau, Inc.,* 375 U.S. 180, 186, 84 S.Ct. 275, 280, 11 L.Ed.2d 237 (1963); *Feit v. Leasco Data Processing Equipment Corp.,* 332 F.Supp. 544, 563–67 (E.D.N.Y. 1971). Permitting an in pari delicto defense in cases involving securities fraud would frustrate the objectives of the securities laws.

■ The in pari delicto defense should be permitted only if the alleged facts show that (1) the plaintiff's conduct was as reprehensible as the defendant's, and (2) the defendant was injured by the plaintiff's actions. *See Mallis v. Bankers Trust,* 615 F.2d at 75; *Savino v. E.F. Hutton & Co.,* 507 F.Supp. at 1234, n. 6; *accord Berner v. Lazzaro,* 730 F.2d at 1324 (The defense is only appropriate where the plaintiff had equal responsibility for the injury it suffered.); *Nathanson v. Weis, Voisin, Cannon, Inc.,* 325 F.Supp. 50, 57 (S.D.N.Y. 1971) ("In pari delicto generally contemplates that both parties are 'in equal fault.'") (citations omitted).

■ Thus, the Court rejects the defendants' argument that Index Fund should be barred from asserting a claim under the securities laws. If the plaintiff suffered a loss as a result of dishonest dealings or deceptive practices, the plaintiff is entitled to the full protection of the securities laws.

### (b) *Fraud on the Market*

■ The plaintiff alleges that Everest and Armstrong violated the securities laws by manipulating the market in such a manner that certain stocks appeared to be valuable, when in fact they were practically worthless. The plaintiff claims that Everest and Armstrong created an artificial price and an artificial market for the securities in question. The evidence presented supports an inference that Everest and Armstrong did manipulate the market. Fraud on the market, if proven, would constitute a securities law violation. *See Panzirer v. Wolf,* 663 F.2d 365, 367–68 (2d Cir.1981), *vacated as moot sub nom. Price Waterhouse v. Panzirer,* 459 U.S. 1027, 103 S.Ct. 434, 74 L.Ed.2d 594 (1982); *Lipton v. Documation, Inc.,* 734 F.2d 740, 743 (11th Cir.1984), *cert. denied sub nom. Peat, Marwick, Mitchell & Co. v. Lipton,* —— U.S. ——, 105 S.Ct. 814, 83 L.Ed.2d 807 (1985); *Minpeco, S.A. v. Conticommodity Services, Inc.,* 552 F.Supp. 332, 337 (S.D.N.Y.1982); *Schlanger v. Four-Phase Systems, Inc.,* 555 F.Supp. 535, 538 (S.D.N.Y. 1982) ("[I]t is hard to imagine that there ever is a buyer or seller who does not rely on market integrity. Who would knowingly roll the dice in a crooked crap game?").

In refuting the plaintiff's allegations concerning market manipulation, the defendants again raise the issue of Hagopian's conduct. The defendants contend that when Hagopian took the bribe and purchased the securities, he knew the securities were worthless or overpriced. The defendants argue that because Hagopian was the plaintiff's employee, Hagopian's knowledge must be imputed to the plaintiff. The defendants assert, therefore, that the plaintiff has no cause of action under the securities laws because—when Index Fund purchased the securities in question—Index Fund knew that the securities were worthless or overpriced. Thus, the defendants claim that summary judgment should be granted in their favor.

The basic laws of agency require that the defendants' argument be rejected. Ordinarily, of course, an agent's knowledge is imputed to his principal. This is based on the presumption that an agent will give his principal any relevant information he has acquired. This presumption breaks down, however, where an agent is acting in his own interest, in a manner that is obviously hostile to the principal's best interests. If, for example, an employee is stealing from his employer, the employer is apt to be the last one to whom the employee will give that information.

If an agent's interests are adverse to those of the principal, therefore, the agent's knowledge will not be imputed to the principal. *See Mallis v. Bankers Trust,* 717 F.2d 683, 689 (2d Cir.1983). Notice to an agent "is notice to the principal, unless the person giving notice has reason to know that the agent ... will not transmit the message to the principal." *Corporacion de Mercadeo Agricola v. Mellon Bank Int'l,* 608 F.2d 43, 46 (2d Cir.1979).

In the instant case, Hagopian's interests were adverse to the plaintiff's, and Everest knew that it was unlikely that Hagopian would tell the plaintiff that the securities were worthless, or that he had accepted a bribe. Thus, even if Hagopian knew that the securities were worthless or overpriced, that knowledge cannot be imputed to the plaintiff.

In sum, the facts alleged by the plaintiff, together with the affidavits and documents presented, are sufficient to support an inference that there may have been a primary violation of the securities laws. In this instance, the question is a factual one and, therefore, must be determined by the trier of fact.

### 2. Scienter

Scienter is the second element that must be established in order to impose aider and abetter liability or statutory liability. The Court finds that the evidence presented raises factual questions concerning the defendants' state of mind and the duty owed to the plaintiff. Summary judgment on this issue, therefore, is inappropriate.[11]

The plaintiff claims that the defendants knew or were reckless in failing to know that Everest and Armstrong were engaged in a broad-based fraudulent scheme. The plaintiff also claims that because Cititrust was the trustee for Armstrong, Cititrust owed the plaintiff a fiduciary duty. The defendants deny having knowledge of any fraudulent scheme, and deny having acted recklessly. The defendants also argue that they did not owe the plaintiff a fiduciary duty.

The Supreme Court has not yet determined whether recklessness constitutes scienter. *See Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 193–94 n. 12, 96 S.Ct. 1375, 1380–81 n. 12, 47 L.Ed.2d 668 (1976). In considering the scienter requirement for secondary liability, however, the second circuit has held that recklessness does constitute scienter, but only if the defendant owes a fiduciary duty to the plaintiff. *See Armstrong v. McAlpin,* 699 F.2d at 91; *Rolf v. Blyth, Eastman,* 570 F.2d at 47. If the defendant is charged with failing to act, the plaintiff must show that the defendant was reckless in failing to carry out his fiduciary duty. Recklessness involves conduct which is highly unreasonable and constitutes an extreme departure from the standards of ordinary care. *See Rolf v. Blyth, Eastman,* 570 F.2d at 47.

Absent a fiduciary duty, the scienter requirement is scaled upwards. *See Edwards & Hanly v. Wells Fargo Securities Clearance Corp.,* 602 F.2d 478, 484 (2d Cir.1979), *cert. denied,* 444 U.S. 1045, 100 S.Ct. 734, 62 L.Ed.2d 731 (1980). The plaintiff must show that the defendant had actual knowledge of the primary violation. *Id.* Where liability is predicated on the defendant's failure to act, the plaintiff must show

---

**11.** Even if the plaintiff is able to prove that the defendants failed to provide adequate supervision, it may ultimately be determined at trial that the defendants' failure to supervise constituted negligence, but did not constitute reckless or intentional conduct, which, of course, is necessary to satisfy the scienter requirement. *See Marbury Management v. Kohn,* 629 F.2d at 710–11 (The court held that the defendants had not acted intentionally or recklessly even though the circumstances indicated that there had been inadequate supervision and lax control by the

defendants.); *see also Armstrong v. McAlpin,* 699 F.2d at 91 (The court noted that "[i]naction on the part of the alleged aider and abetter ordinarily should not be treated as substantial assistance, except when it was designed intentionally to aid the primary fraud or it was in conscious or reckless violation of a duty to act.").

Since, however, it cannot be said as a matter of law that the defendants did not act intentionally or recklessly, resolution of the issue must be reserved for the trier of fact.

that the defendant had "a conscious and specific motivation for not acting...." *IIT v. Cornfeld*, 619 F.2d at 927. The defendant must have intentionally failed to act in order to facilitate the fraudulent scheme.

In support of its claims, the plaintiff points to Cititrust's position as Armstrong's trustee and the fiduciary nature of that role. As trustee, Cititrust agreed to act as transfer agent, registrar and corporate domiciliary for Armstrong. Cititrust was paid $30,000 a year for its services. The plaintiff contends that because Cititrust is a wholly-owned subsidiary of Citibank, both defendants are liable for Cititrust's alleged breach of fiduciary duty and its failure to supervise Armstrong.

The plaintiff alleges that Cititrust provided all but one of Armstrong's officers and directors, and that the directors were Cititrust employees. The plaintiff argues that Cititrust not only failed to supervise Armstrong, but also breached its duty to ensure that the directors and officers supervised Armstrong.

The plaintiff further contends that the Investment Management Agreement between Everest and Armstrong explicitly imposed a fiduciary duty on Armstrong's board of directors, and, therefore, vicariously imposed a fiduciary duty on Cititrust. The agreement provided that all investments made by Everest—on behalf of Armstrong—were subject to the control of Armstrong's board of directors. The plaintiff alleges that Armstrong's directors, along with Cititrust, intentionally or recklessly, failed to provide the supervision and control required by the Investment Management Agreement.

The plaintiff claims that, in light of the type of investments being made by Everest, Cititrust must have known or was reckless in not knowing that Everest was manipulating the market. The plaintiff points to Cititrust's responsibility for reviewing Armstrong's financial records, and alleges that a large number of the securities purchased by Everest were unlisted or were "junk" securities, and that acquiring such securities violated Armstrong's inter-

nal purchasing goals. In addition, the plaintiff points to a letter written by Cititrust in May 1970 which noted that Armstrong's portfolio was being "churned over." The plaintiff claims that the letter shows that Cititrust was aware of Everest's improper investment activities.

The defendants deny all of the plaintiff's allegations concerning knowledge, intent and recklessness. They argue that Cititrust's role as trustee imposed very limited duties—which they contend Cititrust fulfilled—and they argue that neither Cititrust nor Citibank owed the plaintiff a fiduciary duty.

 It is clear that more than one inference can be drawn from the evidence presented and there is significant controversy concerning the material facts. Resolution of the issue of scienter in this case, therefore, must be resolved by the trier of fact at trial, rather than by the Court on summary judgment.

### 3. *Aiding and Abetting: Substantial Assistance*

Substantial assistance is the third and final element that must be established in order to find a defendant liable under the doctrine of aiding and abetting. The plaintiff must show that the defendant rendered substantial assistance to the principal party in effecting the primary violation. *See Rolf v. Blyth, Eastman*, 570 F.2d at 4 (The defendant rendered substantial assistance to the primary violator by advising the plaintiff that he had nothing to worry about with respect to his portfolio, thereby effectively preventing the plaintiff from discovering the fraud.).

The question on this motion, of course, is not whether the evidence presented by the plaintiff is conclusory, but whether—drawing all reasonable inferences in favor of the plaintiff—the evidence raises an issue of fact for trial. The Court concludes that it does. Thus, for the reasons previously discussed, and the reasons set forth below, the defendants' motion for summary judg-

ment on the issue of aiding and abetting is denied.

To constitute substantial assistance, a defendant's action—or inaction—must be a causal factor of the primary violation and the resulting loss by the plaintiff. *See Armstrong v. McAlpin,* 699 F.2d at 92. In other words, the defendant's conduct must actually cause the plaintiff's loss. *See Edwards v. Wells Fargo,* 602 F.2d at 484. The defendant must have associated himself with the venture and participated in it as something that he wished to make succeed. *See IIT v. Cornfeld,* 619 F.2d at 922; *Klein v. Computer Devices, Inc.,* 591 F.Supp. 270, 281 (S.D.N.Y.1984).

In the instant case, the plaintiff claims that the defendants gave substantial assistance to Everest in its fraudulent scheme. The plaintiff rests this claim primarily on the allegation that the defendants "permitted and authorized [Everest] to deal in and dispose of the securities and funds of the Armstrong Fund without proper supervision or direction." *See* Plaintiff's Complaint, at ¶ 28.

In addition, the plaintiff alleges—although without providing supporting documentation—that between 1969 and 1971 Cititrust or Citibank provided "banking credits" to various parties who had ties to Armstrong. According to the plaintiff, the banking credits amounted to $19.4 million, and were generally uncollateralized. The defendants deny these allegations, and claim that the named parties simply had commercial checking accounts. Citibank admits to having made certain loans to Galanis, one of Everest's officers.

Moreover, in July 1970, Cititrust transferred an *overdraft* of $400,000 from the Bahamas to Armstrong's Citibank account in New York. Everest promptly withdrew the money. The defendants claim that this overdraft was a clerical error, but the plaintiff argues that it was done intentionally or at least recklessly.

The plaintiff also asserts that Cititrust was responsible for determining Armstrong's net asset value, based on a monthly review of Armstrong's books and records. After reviewing the records, Cititrust issued monthly valuation reports stating Armstrong's net asset value. The plaintiff claims that all of the reports issued by Cititrust were false, and that Cititrust knew, or was reckless in not knowing, that the reports were false.

In denying the defendant's motion for summary judgment, the Court expresses no view on the ultimate viability of the plaintiff's claims. Although the odds against recovery may be great, the plaintiff is entitled to have the trier of fact decide the material issues of fact that exist.

### 4. *Controlling Persons Doctrine: Control*

The plaintiff claims that Cititrust and Citibank are controlling persons under Section 20(a) of the Securities Exchange Act, 15 U.S.C. § 78t, and Section 15 of the Securities Act, 15 U.S.C. § 77o. The Court finds that summary judgment on the question of control is inappropriate.

Section 20(a) provides in pertinent part:

(a) Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

Section 15 of the Securities Act is substantially the same.[12]

---

12. Section 15 provides:

Every person who, by or through stock ownership, agency, or otherwise, or who, pursuant to or in connection with an agreement or understanding with one or more other persons by or through stock ownership, agency,

or otherwise, controls any person liable under sections 77k or 77l of this title, shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person had no

As previously indicated, three elements must be proved in order to establish statutory liability: (1) a primary violation, (2) scienter, and (3) control of the primary violator by the defendant. The first two elements have been discussed above, which leaves only the element of control to be considered.

Congress enacted the control provisions in order to impose liability on parties "who are in some meaningful sense culpable participants in the fraud perpetrated by controlled persons." *Lanza v. Drexel*, 479 F.2d at 1299. Congress wanted to ensure that a guilty party could not hide behind another person who was in reality being controlled. Congress did not want a controlling party to be able to benefit from another person's fraudulent conduct, while at the same time being insulated from liability. The standard for determining control is provided by Regulation:

> The term "control" ... means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise.

17 C.F.R. § 230.405 (1984).

The plaintiff alleges that, as trustee, Citi- trust had the power to influence and control the policies and activities of both Armstrong and Everest. The plaintiff also asserts that Citibank controlled Armstrong through stock ownership. The plaintiff alleges that Citibank owned a company called Securities Management Co., Ltd., which owned all of the voting shares of the Chase Selection Fund, Ltd. ("Chase"); according to the plaintiff, Chase owned 42% of Armstrong. Based on this chain of stock ownership, the plaintiff claims that Citibank controlled Armstrong.

There is disagreement, however, over what stock is in fact owned or controlled by whom. The defendants deny, for example, that Citibank controls Chase, arguing that Citibank has no equity position in Chase. These are questions of fact, however, and must therefore be resolved at trial.

Because conflicting inferences can be drawn from the information presented, it must be left to the trier of fact to determine whether or not the defendants had the power to control Armstrong and were culpable participants in the alleged fraud.

### D. Pendant Claims

 The plaintiff claims that the defendants are liable—for the acts committed by Everest and Armstrong—under the common law theory of fraud, and under the doctrine of respondeat superior.[13] The defendants' motion for summary judgment on both causes of action is denied, since the allegations previously recited indicate that there are genuine issues of fact to be resolved concerning the defendants' conduct, state of mind, and duty.

### E. Plaintiff's Cross-Motion for Summary Judgment

In response to the defendants' motion for summary judgment, the plaintiff has cross-moved for summary judgment. As previously indicated, summary judgment is not appropriate where material facts are in issue and the evidence is such that conflicting inferences can be drawn. Summary judgment should be granted only if the record makes it clear that the adverse party cannot prevail on the record presented. *See Phoenix Savings v. Aetna*, 381 F.2d at 249.

That is not the situation here. There is sharp disagreement concerning the inferences to be drawn from the facts and circumstances set forth in the pleadings, affidavits and supporting documents. Although the plaintiff's claims concerning secondary liability are sufficient to with-

knowledge of or reasonable ground to believe in the existence of the facts by reason of which the liability of the controlled person is alleged to exist.

**13.** The plaintiff may assert claims under both Section 20(a) and the doctrine of respondeat

superior. The second circuit has held that Section 20(a) was not intended to supplant the doctrine of respondeat superior. *See Marbury Management v. Kohn*, 629 F.2d at 712–16.

512

stand the defendants' motion for summary judgment, it is far from clear that the plaintiff can actually prevail on those claims. Accordingly, the plaintiff's cross-motion for summary judgment is denied.

## CONCLUSION

The plaintiff's motion for leave to amend the complaint to assert claims concerning secondary liability is granted. The defendants' motion for summary judgment is denied insofar as it pertains to secondary liability, and is granted in all other respects. The plaintiff's cross-motion for summary judgment is denied.

So ordered.