Thomas M. LANDY, et al., Plaintiffs,

v.

MITCHELL PETROLEUM TECHNOLOGY CORPORATION; Worldco Services Group, Inc.; Herman Finesod; Petro–Tech Limited Partnership I; Petro–Tech Limited Partnership II; Petro–Tech Limited Partnership III; Petro–Tech Limited Partnership IV; Petro–Tech Limited Partnership V; Ray Wilson; Aquanetics, Inc.; Robert Haig Hachadoorian; CNA Investor Services, Inc.; Friedman & Shaftan, P.C.; Wilfred T. Friedman; Marcia Shaftan, as executrix of the estate of Robert P. Shaftan; Michael E. Greene; Heller, White & Company; and World Information Systems, Defendants.

No. 88 Civ. 2932 (PKL).

United States District Court, S.D. New York.

April 5, 1990.

Beigel & Sandler, New York City, for plaintiffs.

Gold, Wachtel & Miller, New York City (Elliot Silverman, of counsel), for defendants Mitchell Petroleum, Worldco Services, Herman Finesod, Petro–Tech Ltd. Partnerships I–V, Aquanetics and Robert Haig Hachadoorian.

Shea & Gould, New York City (Adam B. Gilbert and Karim G. Lynn, of counsel), for defendants Friedman & Shaftan, Wilfred T. Friedman, Michael E. Greene and Marcia S. Shaftan.

Ferber Greilsheimer Chan & Essner, New York City (Robert N. Chan and Robert M. Kaplan, of counsel), for defendant CNA Investor Services.

Abady & Jaffe, New York City (Samuel A. Abady and Matthew G. Dineen, of counsel), for defendant World Information Systems.

## OPINION AND ORDER

LEISURE, District Judge.

This is a securities fraud action brought pursuant to §§ 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t(a), § 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a), the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, and common law principles. Defendants[1] have moved on various grounds to dismiss the claims against them.

## BACKGROUND

In late 1983, plaintiffs,[2] citizens of fourteen different states,[3] invested in four limited partnerships, known as Petro–Tech

---

**1.** All defendants are represented in this motion except Heller, White & Company.

**2.** The named plaintiffs are: Thomas A. Landy, Morris J. Landy, Timothy E. Weil, Clark St. John, James L. Bradley, Christopher Weil, James Bakken, Allen E. Wolf, Ruth R. Wolf, Carl E. Howe, M. Stephen Brandon as executor of estate of Gail Sheley, Thomas J. Welsh, Arthur Ray Jones, Joe David House, Joe K. George, John Williams, Margaret Williams, James W. Monsour, M.D., Robert Gordon Harper, Harriet H. Sweeney, Dennis Cattell, Yvonne Cattell, James A. McTague, Richard G. Fisher, M.D., Charles Hylen, Mary Hylen, Phillips J. Goodenough, George Sennett, Edith Sennett, Charles D. Bell, Karil H. Bell, Thomas L. Fran-

cis, Anges McColl, James M. Clayton, Jr., Chris Dreher, Billy Don Brown, John Walton, Fred J. Cecil, Scott Chandler, Frederick N. Miller, Jr., David P. Swanson, Robert L. Kilpatrick, John E. Miller, Mikhail F. Jeha, M.D., D & D Investments, Glenn V. Johnson, Robert E. Hormann, Dennis H. Doonan, Stanley A. Fruchtman, Jack Arnold, Jerry Mudler, Russell C. Coit, Paul E. Canup, John Busch, D.D.S., Dean D. Yates, and Steven L. Ezzes.

**3.** Plaintiffs are identified in the complaint as being citizens of the following states: Indiana, California, Tennessee, Texas, Washington, Colorado, Minnesota, Georgia, Arizona, Illinois, Florida, Arkansas, Missouri, and New York.

Limited Partnership I, Petro–Tech Limited Partnership II, Petro–Tech Limited Partnership III, and Petro–Tech Limited Partnership V ("the partnerships"). The investments ranged from $15,000 to $100,000. Each of the partnerships was essentially identical. The purpose of the partnerships was to market a product designed to recycle and reclaim used lubricating oils. Each of the five partnerships was assigned an exclusive territory in which to market the product.

Since the early years of this century, industry has attempted to reclaim used lubricating oils. By removing impurities, including air, gases, and particulates, that accumulate during the lubricating process, the original lubricating properties of the oil can be restored and the oil can be reused. In 1977, defendant Robert Haig Hachadoorian ("Hachadoorian") received a patent for a new oil reclamation process. The process was developed through the auspices of defendant Aquanetics, Inc. ("Aquanetics"), a New York corporation, of which Hachadoorian was president. From 1978 to 1983, when the offerings of the partnerships were prepared, Aquanetics managed to sell only 40 of its oil reclamation systems. Nonetheless, in 1981, defendant Mitchell Petroleum Technology Corporation ("Mitchell") signed an agreement with Aquanetics whereby Mitchell was granted a five year exclusive right to market Aquanetics' products in the United States. The agreement further provided that Mitchell had non-exclusive marketing rights for an additional 20 years after the initial five year period.

Upon signing its agreement with Aquanetics, Mitchell then subdivided its licensing rights geographically, and marketed those rights through partnerships which would be given marketing sublicensing rights for a fee. Mitchell acted as the promoter of the partnerships. Defendant Worldco Service Group ("Worldco") was a broker of interests in the partnerships. Defendant Herman Finesod ("Finesod") was a principal in both Mitchell and Worldco. Defendant Ray Wilson ("Wilson") was allegedly a general partner of the partnerships.[4] Defendant Friedman & Shaftan is a New York City law firm that prepared legal opinions, including tax opinions, which appeared in the offering memoranda of the partnerships. Defendants · Wilfred T. Friedman and Michael Greene are members of that law firm, and defendant Marcia Shaftan represents the estate of Robert Shaftan, a deceased member of the firm. Defendant Heller & White, apparently a market research firm, prepared a report on the current state of and potential for the oil reclamation industry, and defendant World Information Systems ("WIS") prepared a report on the market potential of the Aquanetics product. Defendant CNA Investor Services ("CNA"), a financial services and brokerage firm, sold units in the partnerships to certain of the plaintiffs.

The purpose of the partnerships is described in detail in the offering memoranda. Each partnership received from Mitchell a sublicense which permitted the partnership to market Aquanetics' product in a specified geographic region. For that right, each partnership was to pay Mitchell a fee far greater than the license fee Mitchell was paying to Aquanetics. Potential investors were repeatedly warned in the offering memoranda that investment in the partnerships was risky, and that the potential for profit was speculative. Indeed, each offering memorandum included on its first page a notice in bold type and all capital letters, set off from the rest of the print on the page by spaces and lines which stated, "These securities involve a high degree of risk (See 'Risk Factors')". The body of each offering memorandum contained approximately five pages under the heading "Risk Factors," outlining management risks, transactional risks and tax risks, among others. Further, the offering memoranda indicated that potential investors in the partnership should have a liquid net worth of at least $250,000, and annual

---

**4.** Although the amended complaint identifies Wilson as a general partner of the partnerships, none of the offering memoranda for the partnerships mentions Wilson. Petro–Tech Partnerships I, II, and III list Samuel J. Simon as the sole general partner. Petro–Tech Partnership V lists Samuel J. Simon and Richard M. Messina as joint general partners.

income placing the individual in the Federal income tax bracket then taxed at a 49% marginal rate.

It appears from the offering memoranda that the focus of the partnerships was the potential tax advantages that could be reaped from the probable losses to be suffered during at least the first few years of the partnerships. A significant portion of each offering memorandum was dedicated to the potential tax advantages for an investor. Each memorandum included an extensive tax analysis and opinion prepared by defendant Friedman & Shaftan. The analysis opined that it was likely that investors, who would become limited partners, would be able to deduct a portion of the partnership losses for income tax purposes. Further, the second page of the offering memoranda trumpeted the potential tax consequences for an investor, estimating that tax deductions could reach 400% of initial cash investments.

However, the offering memoranda also were explicit in warning potential investors that the potential tax benefits of the partnerships could not be guaranteed. On the fourth page of each memorandum, investors were warned, "THERE IS ALSO A SUBSTANTIAL RISK THAT THE INTERNAL REVENUE SERVICE WILL SEEK TO SET ASIDE ALL OR A PORTION OF THE DEDUCTIONS CLAIMED BY THE PARTNERS...." This warning was repeated in detail under the heading "Risk Factors," and also in the tax opinion letter prepared by Friedman & Shaftan. Despite this focus on tax losses, the offerings did not state that the partnerships were without profit potential. While the offerings do not indicate great optimism about future profits, it could be implied from the offerings that the promoters expected that profit might be realized, despite the risks.

Irrespective of the explicit references to risk in the offering memoranda, plaintiffs in this action invested in these partnerships. Each investor signed a subscription agreement, describing the obligations of the investor, and certifying that said investor had received and reviewed carefully the offering memorandum, the partnership agreement, and the subscription agreement. The investor further certified by signature that he or she had sufficient financial acumen to understand the offering memorandum and partnership agreement, understood that the investment had a high degree of risk, and understood that the potential tax advantages of the partnership might be disallowed by the Internal Revenue Service.

In July 1986, three years after the formation of the partnerships, the eventuality occurred about which the investors had been forewarned: the Internal Revenue Service disallowed all income tax deductions arising from participation in the partnerships. Eighteen months after the tax disallowance, plaintiffs filed the instant action. Plaintiffs allege that defendants acted individually and in concert to defraud investors, by intentionally misrepresenting the value of the partnerships. In particular, they allege that defendants represented that the partnerships had profit potential when defendants knew or should have known that in fact there was absolutely no possibility of the partnerships ever showing a profit. The gravamen of plaintiffs' amended complaint is that defendants Mitchell, Finesod, Aquanetics, Hachadoorian and the partnerships conspired "to organize limited partnerships involving the sublicense of the [Aquanetics] system which was grossly overvalued, so that significant tax benefits and profits could be promised to investors." Amended Complaint ¶ 10. The other defendants, who supplied supporting data for the offering memoranda or marketed the partnerships, allegedly knew or should have known of the promoters' intent.

All defendants, except Heller, White, have now come before the Court seeking various forms of relief from the Court. All represented defendants have moved for dismissal of the fraud claims in the amended complaint pursuant to Fed.R.Civ.P. 9(b); for dismissal of claims under § 17(a) of the Securities Act of 1933, under § 10(b) of the Securities Exchange Act of 1934, and under RICO pursuant to Fed.R. 12(b)(6); and for the dismissal of pendant state law claims pursuant to Fed.R.Civ.P. 12(b)(1). Further,

defendant CNA has moved for summary judgment pursuant to Fed.R.Civ.P. 56, against those plaintiffs who did not purchase their partnership units through CNA.

## DISCUSSION

Defendants have moved jointly and individually to dismiss various portions of plaintiffs' amended complaint pursuant to Fed.R.Civ.P. 9(b), 12(b)(1), 12(b)(6), and 56. The Court will address defendants' various arguments in turn.

### A) Claims Under § 17(a)

■ Plaintiffs' second claim for relief arises under § 17(a) of the Securities Act of 1933. Until the issue is squarely before it, the Second Circuit has not found it necessary to consider overruling *Kirshner v. United States*, 603 F.2d 234 (2d Cir.1978) (there is a private right of action under § 17(a)), *cert. denied*, 442 U.S. 909, 99 S.Ct. 2821, 61 L.Ed.2d 274 (1979), to be consistent with the holdings of several other circuit courts. *See Ronzani v. Sanofi S.A.*, 899 F.2d 195, 198 (2d Cir.1990). However, following Judge Friendly's pointed suggestion that there be a reexamination of this question, *Yoder v. Orthomolecular Nutrition Inst., Inc.*, 751 F.2d 555, 559 n. 3 (2d Cir.1985), this Court has repeatedly found there to be no private right of action under § 17(a). *See, e.g., O'Brien v. Nat'l Property Analysts Partners*, 719 F.Supp. 222, 231 (S.D.N.Y.1989); *Huang v. Sentinel Gov't Securities*, 709 F.Supp. 1290, 1294–95 (S.D. N.Y.1989); *Goldman v. McMahan, Brafman, Morgan & Co.*, 706 F.Supp. 256, 258 (S.D.N.Y.1989); *Dubin v. E.F. Hutton Group, Inc.*, 695 F.Supp. 138 (S.D.N.Y. 1988). *See also, Eickhorst v. American Completion and Development Corp.*, 706 F.Supp. 1087, 1098 (S.D.N.Y.1989) ("[T]he Court is aware of no recent voice substantively arguing the correctness of the conclusion that section 17(a) carries with it an implied private right of action."). The Court finds nothing in plaintiffs' argument to require a change of heart on the justiciability of claims under § 17(a). Accordingly, plaintiffs' second claim for relief under § 17(a) in their amended complaint is dismissed with prejudice.

### B) CNA's Motion For Summary Judgment

Only plaintiffs Joe K. George, Joe David House, M. Stephen Brandon, Thomas J. Welsh, George Sennett and Edith Sennett purchased their investment in the partnerships through CNA. None of the other plaintiffs had any contact with CNA in connection with the partnerships. CNA has moved thus for summary judgment pursuant to Fed.R.Civ.P. 56 against all plaintiffs except those who purchased their interests in the partnership from CNA. Plaintiffs have indicated that they do not oppose CNA's motion for summary judgment against these plaintiffs. Plaintiffs' Memorandum of Law at 1. Accordingly, defendant CNA's motion for summary judgment on all claims against all plaintiffs *except* Joe K. George, Joe David House, M. Stephen Brandon, Thomas J. Welsh, George Sennett and Edith Sennett, is granted.

### C) Defendant Petro–Tech Partnership IV's Motion to Dismiss

Defendant Petro–Tech Limited Partnership IV ("Petro–Tech IV") has moved for dismissal of all claims against it. By admission, none of the plaintiffs purchased units of Petro–Tech IV. *See* Amended Complaint, Exhibit A. Accordingly, Petro–Tech IV has moved for dismissal for plaintiffs' lack of standing.

■ Under the standing doctrine, "a plaintiff must allege that he or she is suffering from an injury directly traceable to the actions of the defendant(s)." *Fletcher v. Marino*, 882 F.2d 605, 610 (2d Cir.1989). *See also Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 99, 99 S.Ct. 1601, 1607–08, 60 L.Ed.2d 66 (1979) (the injury alleged must be the result of the "putatively illegal conduct of the defendant"). A plaintiff may not rest his or her claim for relief on the legal rights of some third party. *Allen v. Wright*, 468 U.S. 737, 750–52, 104 S.Ct. 3315, 3324–25, 82 L.Ed.2d 556,

*reh'g denied*, 468 U.S. 1250, 105 S.Ct. 51, 82 L.Ed.2d 942 (1984).

 It is abundantly clear that to maintain a securities fraud claim under § 10(b) and Rule 10b–5,[5] a plaintiff must be an actual purchaser or seller of the security in question. *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 730–31, 95 S.Ct. 1917, 1922–23, 44 L.Ed.2d 539 (1975); *Birnbaum v. Newport Steel Co.*, 193 F.2d 461, 463–64 (2d Cir.), *cert. denied*, 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952); *Baum v. Phillips, Appel & Walden, Inc.*, 648 F.Supp. 1518, 1525 (S.D.N.Y.1986). Thus, plaintiffs in the instant action do not have standing to assert securities law violations against Petro–Tech IV as they are neither purchasers or sellers of units of that partnership. Further, plaintiffs may not maintain RICO claims against Petro–Tech IV. RICO claims are dependent upon the proper allegation of predicate acts, and plaintiffs have no basis to allege any predicate acts against Petro–Tech IV. As already noted, their securities fraud claim cannot survive, nor can their claims of mail or wire fraud against Petro–Tech IV. Plaintiffs do not allege that they received any correspondence from Petro–Tech IV, or were in any way misled by any materials related to Petro–Tech IV.

Plaintiffs rely on *Marshall & Ilsley Trust Co. v. Pate*, 819 F.2d 806 (7th Cir. 1987) to challenge this conclusion. However, *Pate* only stands for the proposition that in a RICO claim, a plaintiff does not have to show that he was individually injured by all the predicate acts alleged. The situation covered by *Pate* is where a single defendant in a RICO case takes a variety of actions, only some of which affect the plaintiff. *Pate* states that the plaintiff can allege all of the defendant's actions as predicate acts to the RICO claim, even though the plaintiff was not harmed by

every one of those acts. It does not stand for the notion that a plaintiff in a RICO action may allege injury against defendants against whom he or she would normally not have standing. Accordingly, the Court finds that plaintiffs do not have standing to state a claim against Petro–Tech IV. Thus, all claims against Petro–Tech IV are dismissed.

## D) Defendants' Motion to Dismiss the § 10(b) Claim

"Dismissal of a complaint for failure to state a claim is a 'drastic step.'" *Meyer v. Oppenheimer Management Corp.*, 764 F.2d 76, 80 (2d Cir.1985) (citations omitted). "The function of a motion to dismiss is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir.1984) (citations omitted). Thus, a motion to dismiss must be denied "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), *citing Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Morales v. N.Y. State Dep't of Corrections*, 842 F.2d 27, 30 (2d Cir.1988). In deciding a motion to dismiss, the Court must accept the plaintiff's allegation of facts as true together with such reasonable inferences as may be drawn in its favor. *Murray v. City of Milford, Connecticut*, 380 F.2d 468, 470 (2d Cir.1967). *See also Scheuer, supra*, 416 U.S. at 236, 94 S.Ct. at 1686. However, the Court is not required to accept a strained interpretation of such allegations. *See Ronzani v. Sanofi S.A., supra* 899 F.2d at 197.

---

**5.** Plaintiffs also appear to allege a claim pursuant to § 20(a) of the Securities Exchange Act. Section 20(a) is a derivative liability act that creates liability on the part of "controlling persons" of any other person liable under a substantive provision of the Securities Exchange Act. Plaintiffs do not explicitly plead who among defendants are intended to be liable under § 20(a). Indeed, the only mention of

§ 20(a) in the complaint is as an undefined predicate act to plaintiffs' RICO claim. *See* Amended Complaint ¶ 59. Since a § 20(a) claim, as with every fraud claim, must meet the requirements of Fed.R.Civ.P. 9(b), the Court must find that no § 20(a) has been properly alleged against defendant Petro–Tech IV, as no effort has been made to plead any such claim with particularity.

**616**

■ Defendants first assert that plaintiffs failed to bring their action within the applicable statute of limitation. Defendants allege that the Court must apply a uniform federal statute of limitation to all § 10(b) claims. Traditionally, federal courts have adopted analogous state law statutes of limitation where the federal law at issue does not provide a limitation provision of its own. Such has long been the case with private actions brought under § 10(b). However, recently the Third Circuit adopted a one year statute of limitation for claims arising under § 10(b). *In Re Data Access Systems Securities Litigation*, 843 F.2d 1537 (3rd Cir.) (*en banc*), cert. denied, —— U.S. ——, 109 S.Ct. 131, 102 L.Ed.2d 103 (1988). The Third Circuit acted in response to two Supreme Court decisions which adopted uniform federal statutes of limitation for two specific federal claims. *See Agency Holding Corp. v. Malley–Duff & Associates, Inc.*, 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987) (RICO); *Del Costello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983) (collective bargaining agreements). Defendants urge the Court to follow the lead of the Third Circuit and to adopt a uniform one year statute of limitation for actions under § 10(b).

The Second Circuit has long applied the analogous state law statute of limitation to actions brought under § 10(b). *Armstrong v. McAlpin*, 699 F.2d 79, 86–87 (2d Cir. 1983). This Court and other courts in this District have faced similar requests to adopt the Third Circuit's decision in *Data Access*, and have repeatedly declined that request. *See, e.g., Azurite Corp., Ltd. v. Amster & Co.*, 730 F.Supp. 571, 582 (S.D.N.Y.1990); *Matignon Finance, Inc. v. Ameritel Communications Corp.*, 1989 WL 153282, 1989 U.S.Dist. LEXIS 14937, 15–16 (S.D.N.Y.1989); *Huang v. Sentinel Government Securities*, 709 F.Supp. 1290, 1301 n. 10 (S.D.N.Y.1989); *Eickhorst v. American Completion and Development Corp.*, 706 F.Supp. 1087, 1102 (S.D.N.Y. 1989); *Metropolitan Securities v. Occidental Petroleum Corp.*, 705 F.Supp. 134, 138 (S.D.N.Y.1989). The Court rejects that request again today. The Court shall apply that applicable analogous state law statutes of limitation, as discussed more completely below.

The Court's inquiry cannot end here, however. Defendants assert that even if the Court rejects the holding of *Data Access*, plaintiffs' § 10(b) claim should still fail on statute of limitation grounds. It is defendants' contention that plaintiffs' securities fraud claims should be deemed to have accrued from the time of purchase of the securities, and not at the time that plaintiffs aver discovery of the alleged fraud. Defendants maintain that plaintiffs knew, or should of known from reviewing the offering memoranda and supporting material, of the fraudulent activity that plaintiffs now allege in their amended complaint. Plaintiffs assert that the alleged fraud was not discoverable on the face of the offering materials, and that their discovery of the fraud was prevented by defendants' fraudulent concealment. *See* Amended Complaint ¶ ¶ 43, 44.

The heart of plaintiffs' fraud allegations is that defendants, individually and in concert, induced plaintiffs to invest in the partnerships by promising financial returns to plaintiffs, which defendants knew or should have known were impossible. Plaintiffs focus on three alleged misrepresentations by defendants: first, that tax benefits would accrue to plaintiffs; second, that the sublease was a fair value based on the potential of the Aquanetics system; and third, that the ultimate goal of the partnerships was to operate a profitable sublicensing business. Plaintiffs allege that, in fact, defendants knew that there was no possibility that the partnerships could ever be profitable because the Aquanetics system was of only limited value, and certainly was of significantly less value than the amount paid by the partnerships for the sublicenses. Further, plaintiffs claim defendants knew that the tax benefits would be disallowed.

■ Under the federal law applicable to this case, a claim for fraud accrues when plaintiffs discovered the alleged violations or should, upon reasonable inquiry, have

discovered them. *Freschi v. Grand Coal Venture,* 767 F.2d 1041, 1047 (2d Cir.1985), *vacated on other grounds,* 478 U.S. 1015, 106 S.Ct. 3325, 92 L.Ed.2d 731 (1986); *Arneil v. Ramsey,* 550 F.2d 774, 780 (2d Cir. 1977). The amended complaint alleges that plaintiffs did not discover the alleged fraud until at least July 1986, and did not discover the full extent of that fraud until 1988. So the focus of the Court's inquiry is on whether plaintiffs should have discovered the fraud at the time they purchased the securities. Defendants maintain that whatever fraud might have existed in the partnerships and their marketing was discoverable from the face of the offering memoranda and support materials, and thus plaintiffs should have discovered the alleged fraud at the time they purchased their securities. Defendants argue that even if every aspect of the fraud now claimed by plaintiffs was not revealed in the offering materials, the explicit and repeated warnings in those materials of potential risk and past performance put plaintiffs on "inquiry notice" that all was not right with the partnerships. "Inquiry notice is triggered by evidence of the possibility of fraud, not full exposition of the scam itself." *Kennedy v. Josephthal & Co.,* 814 F.2d 798 (1st Cir.1987). "The commencement of the statutory period does not await a plaintiff's 'leisurely discovery of the full details of the alleged scheme.' " *Phillips v. Levie,* 593 F.2d 459, 462 (2d Cir.1979), *quoting Klein v. Bower,* 421 F.2d 338, 343 (2d Cir.1970). "The test as to when plaintiff should have discovered the fraud is an objective one." *Armstrong, supra,* 699 F.2d at 88.

The United States District Court for the District of Columbia was recently faced with a similar motion in another securities fraud action involving some of the same defendants now before this Court. *Bender v. Rocky Mountain Drilling Associates,* 648 F.Supp 330 (D.D.C.1986). While that case involved allegations of fraudulent activity that were clearly discoverable on the face of the offering memorandum, the District Court's opinion is nonetheless instructive. As in the instant case, the plaintiffs in *Bender* certified at the time of their purchases that they were sophisticated investors, and acknowledged receipt and knowledge of the offering material. Further, the plaintiffs alleged that defendants had fraudulently concealed the true nature of the investments at issue. The District Court explicitly rejected plaintiffs' claims of fraudulent concealment, noting that the concealment doctrine does not protect plaintiffs when they are on notice of the harm complained of. "Moreover, the limitation period is not tolled if a plaintiff has a reasonable basis to suspect wrong and fails to exercise due diligence to investigate the matter." *Id.* at 335 (citations omitted).

The Court agrees with plaintiffs that, unlike the situation in *Bender,* all the allegations of fraud in the instant action were not immediately revealed on the face of the offering materials. In particular, plaintiffs allege that defendants knew that the partnerships would not and could not be operated in a profitable manner, and yet represented in the offering memoranda that the partnerships would be operated with the intent of making a profit. Amended Complaint ¶¶ 37, 40. Plaintiffs' argument that this lack of direct disclosure in the offering memoranda frees them from the obligation to have discovered the fraud at the time of purchase might succeed, if the law placed no duty of inquiry on plaintiffs. But the law is not so forgiving, particularly where, as here, plaintiffs certified by their purchase that they were sophisticated investors who had knowledge of the offering materials.

The offering memoranda and supporting materials are, as discussed above, quite explicit as to the risks and financial arrangements. The risk of discontinuance of tax benefits from investments in the partnership are outlined in detail both in the offering memoranda and the tax opinion letter from Friedman & Shaftan attached to the memoranda. The relationship between past sales and earning of Aquanetics and the sublease price is also clearly outlined in the offering materials. The marketing reports prepared by WIS and Heller, White were available to plaintiffs if they had desired to review further the extent of

**618**

the risks so clearly outlined in the offering memoranda. The Court finds that, as in *Bender, supra,* the offering memoranda put, or should have put, plaintiffs on notice that something was amiss. If, as plaintiffs now assert, the offering materials were patently misleading and internally inconsistent, there is no reason why, upon examination at the time of purchase, plaintiffs could not have discovered the alleged misstatements at that time. The only event which occurred between the time of purchase and the time of the filing of this action was the Internal Revenue Service's disallowance of the tax benefits from the partnership. It is clear that this action led to plaintiffs' in-depth investigation of the partnerships. But this is mere delay, not a change in circumstances. The same inconsistencies that plaintiffs now trumpet were present on the face of the offering materials at the time of purchase in 1983. The fact that plaintiffs waited until their investments turned against them to investigate risks of which they were so clearly warned at the time of investment cannot protect their cause of action.

Additionally, plaintiffs' invocation of fraudulent concealment must be rejected. While plaintiffs allege that defendants acted to prevent them from learning of the depth of the failure of their investment until 1988, the fact remains that the misrepresentations and financial inconsistencies and inaccuracies complained of arise out of the same offering memoranda and supporting material that plaintiffs certified they had reviewed at the time of purchase. When an investment so clearly proclaims its risks, as well as its potential rewards, a plaintiff cannot hide behind alleged ignorance and lack of need to investigate. The offering memoranda openly invited, indeed encouraged, investigation. "[M]ere conclusory allegations that [plaintiffs] were unable to discover the fraud are insufficient" to avoid a finding that the statute of limitation has run. *Anisfeld v. Cantor Fitzger-*

*ald & Co.,* 631 F.Supp. 1461, 1466 (S.D.N.Y.1986).

Thus, the Court finds that the statute of limitation begins to run from the date of purchase of the partnership units. It remains to determine the applicable statute of limitation. It has already been noted that the Court will adopt the applicable state statute of limitation. In New York, federal courts have consistently applied New York State's statute of limitation for common law fraud to actions brought under § 10(b), which provides that actions shall be brought within six years of discovery. *Armstrong, supra,* 699 F.2d at 86. However, this limitation applies only to those plaintiffs who reside in New York State. For those plaintiffs residing outside New York, New York State's borrowing statute applies. *Arneil v. Ramsey,* 550 F.2d 774, 779–80 (2d Cir.1977).

> According to the borrowing statute, an action accruing outside New York is time-barred if commenced after the expiration of the limitary period provided by the law of either New York or the place where the cause of action accrued. A claim for securities fraud accrues in the state where the loss resulting from the misrepresentation was sustained and not where the defendant committed the wrongful act. Normally, the economic impact is sustained in plaintiff's state of residence.

*Anisfeld, supra,* at 1465 (citations omitted). Plaintiffs do not challenge the application of the analogous statute of limitation for the state of residence of the individual plaintiffs.

■ It is uncontested that only the New York six year statute of limitation protects plaintiffs' claims, as plaintiffs purchased their interests in the partnerships in the fall of 1983, and filed this action in the spring of 1988. The remaining states where various plaintiffs reside have analogous state statutes of limitation for § 10(b) actions of three years or less under which plaintiffs' claims could not survive.[6] Thus,

---

6. Alaska: 2 years; Arizona: 3 years; California: 3 years; Colorado: 3 years; Florida: 2 years; Georgia: 2 years; Illinois: 3 years; Indiana: 2 years; Minnesota: 3 years; Missouri: 2 years; Tennessee: 3 years; Texas: 2 years; Washington: 3 years. *See* Defendant Friedman & Shaftan Memorandum of Law at 49–51.

all § 10(b) claims, except that of plaintiff Steven L. Ezzes, the only plaintiff residing in New York, must be dismissed for failure to file within the applicable statute of limitation.

 Defendants Friedman & Shaftan, Wilfred Friedman, Michael Greene and Marcia Shaftan (hereinafter the "Friedman & Shaftan defendants") contend that plaintiffs cannot show that they detrimentally relied on the alleged misstatements in the offering memorandum to their detriment. This is a different question than whether plaintiffs should have inquired into the background of the partnerships, which was central to determination of the tolling of the statute of limitation. For a § 10(b) claim to be successfully pled, plaintiffs must show in their complaint that they relied, reasonably and to their detriment, on misrepresentations by defendants. Here plaintiffs allege that the Friedman & Shaftan defendants made two major material representations in their tax opinion letter attached to the offering memoranda, upon which plaintiffs detrimentally relied. First, plaintiffs maintain that Friedman & Shaftan represented that there was some chance that the tax advantages would not be disallowed, when, in fact, defendants knew there was no chance the tax deductions would withstand scrutiny. Second, plaintiffs contend that Friedman & Shaftan misrepresented in their opinion letter that the ultimate purpose of the partnerships was to earn a profit for the general and limited partners, when, in fact, all defendants knew there was no chance that the partnerships could ever be profitable.

The Friedman & Shaftan defendants assert that the innumerable warnings of risk in the offering memoranda and the tax opinion letter make any reliance by plaintiffs unreasonable. The Court cannot agree. Plaintiffs do not allege that they relied on representations that there would be tax benefits and eventual profits, they allege reliance on representations that there was a chance of either tax benefits or profits, representations that plaintiffs have alleged were false. Amended Complaint ¶¶ 35–37. The cases on which the Friedman & Shaftan defendants rest, *Luce v. Edelstein*, 802 F.2d 49 (2d Cir.1986) and *Feinman v. Schulman Berlin & Davis*, 677 F.Supp. 168 (S.D.N.Y.1988), are not inapposite to this Court's conclusion. In those cases, the statements on which the plaintiffs allegedly detrimentally relied were directly contradicted or tempered by disclaimers within the offering materials. This is not the case here. The offering memoranda and opinion letter did state that there was a possibility of profit and a possibility of tax benefits, even if fraught with risk. It is these representations which plaintiffs allege were false and misleading, and on which plaintiffs reasonably relied. This is a sufficient allegation to state a claim under § 10(b). Thus, the Friedman & Shaftan defendants' motion to dismiss for failure to plead reliance adequately is denied.

 Defendant WIS alleges that plaintiffs' securities law claim must be dismissed for failure to allege causation properly. WIS bases its assertion on *Bloor v. Carro, Spanbock, Londin, Rodman & Fass*, 754 F.2d 57 (2d Cir.1985), in which the Second Circuit found that causation had not been properly alleged. However, *Bloor* is inapplicable to the case at hand. The claim in *Bloor* was mismanagement after the securities offering. The offering itself was not at issue in the motion before the Court. The Court found that the plaintiff could not show a sufficient relation between the law firm's assistance in the original securities offering and the subsequent mismanagement. There is no such intervening event in the instant case. Plaintiffs have averred that, without the alleged misrepresentation of defendants, they would not have suffered any loss. Accordingly, the Court finds that plaintiffs have sufficiently alleged causation.

### E) Aiding and Abetting Liability

Defendants WIS and CNA contend that plaintiffs have failed to allege sufficiently a claim of aiding and abetting liability against them. "Aiding and abetting liability has three requirements: (1) the existence of a securities law violation by the

primary (as opposed to the aiding and abetting) party; (2) 'knowledge' of this violation on the part of the aider and abettor; and (3) 'substantial assistance' by the aider and abettor in the achievement of the primary violation." *Bloor, supra,* 754 F.2d at 62; *Armstrong, supra,* 699 F.2d at 91; *IIT v. Cornfeld,* 619 F.2d 909, 922 (2d Cir.1980). For the purposes of a Rule 12 motion, the court finds that these elements have been sufficiently pled.[7]

### F) Defendants' Motion to Dismiss the § 10(b) Claim under Rule 9(b)

■■■■■ All defendants have challenged the sufficiency of plaintiffs' complaint under Fed.R.Civ.P. 9(b). Rule 9(b) states:

> In all averments of fraud or mistake, the circumstances constituting the fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

In a motion to dismiss a complaint pursuant to Rule 9(b), as in a motion under Rule 12(b), a plaintiff's allegations must be taken as true. *See, e.g., Luce v. Edelstein,* 802 F.2d 49, 52 (2d Cir.1986). The complaint's fraud allegations must be specific enough to allow the defendant "a reasonable opportunity to answer the complaint" and must give "adequate information" to allow the defendant "to frame a response." *Ross v. A.H. Robins, Co.,* 607 F.2d 545, 557–58 (2d Cir.1979), *cert. denied,* 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980). Rule 9(b) is designed to provide a defendant fair notice of a plaintiff's claim, in order to enable a defendant to prepare a defense, protect defendant's reputation or goodwill from harm, and reduce the number of strike suits. *DiVittorio v. Equidyne Extractive Industries, Inc.,* 822 F.2d 1242, 1247 (2d Cir.1987). Rule 9(b) must be read, however, in conjunction with Rule 8(a), which requires a plaintiff to plead only a short, plain statement upon which he is entitled to relief. *A.H. Robins,* 607 F.2d at 557 n. 20. Nonetheless, "fraud allegations ought to specify the time, place, speaker, and content of the alleged misrepresenta-tions. Where multiple defendants are asked to respond to allegations of fraud, the complaint shall inform each defendant of the nature of his alleged participation in the fraud." *DiVittorio,* 822 F.2d at 1247 (citations omitted). It is necessary to address the various defendants' assertions regarding the sufficiency of the amended complaint, in turn.

#### 1) Defendants Mitchell Petroleum, et al.

■■■ Defendants Mitchell Petroleum, Worldco, Finesod, the partnerships, Aquanetics, and Hachadoorian (collectively the "Mitchell defendants") maintain that the amended complaint fails to allege a § 10(b) claim with sufficient particularity against any and all of them. The Court finds that the complaint sufficiently pleads a § 10(b) claim against defendants Finesod, the partnerships, and Mitchell Petroleum. Plaintiffs clearly outline the misrepresentations they claim that defendants made to plaintiffs. Amended Complaint ¶¶ 11, 13, 15, 16, 22, 36, 37. The Court notes that, in the Second Circuit, pleading requirements are relaxed slightly where the defendant involved is connected to the preparation of the allegedly misleading offering memoranda. *DiVittorio,* 822 F.2d at 1247–48. But regardless of that standard, it is clear from the face of the amended complaint that Finesod, the partnerships, and Mitchell are allegedly responsible for identifiable misrepresentations which, it is clearly averred, they knew were false. The clear connection of these defendants to the offering materials is sufficient to meet the requirement that plaintiffs plead knowledge of the alleged falsehoods.

■■■ The Court cannot reach the same conclusion, however, for defendants Aquanetics, Hachadoorian and Worldco. The connection of these defendants to the alleged misrepresentations is pled in only the most conclusory manner. Worldco is alleged to have been a broker of interests in the partnerships, and is allegedly controlled by defendant Finesod. But such guilt by association is not a sufficient pleading of fraud under Rule 9(b). Similar-

---

**7.** The viability of plaintiffs' amended complaint under Rule 9(b) will be discussed, *infra.*

ly, the only substantial allegation against Aquanetics is that it, along with Mitchell, hired one Ernest Fitch ("Fitch") to prepare a marketing report. However, the connection between Fitch and the offering memoranda is not sufficiently pled. No clear allegations are made against Hachadoorian, except through his association with Aquanetics. All defendants are generally alleged to have participated in the general scheme, but such broad allegations are not sufficient under Rule 9(b). Plaintiffs must clearly identify each defendant's role in the scheme and what their connection was to the alleged misrepresentation. On these grounds, the amended complaint is insufficient. Thus, the § 10(b) claim against defendants Worldco, Aquanetics, and Hachadoorian is dismissed as insufficiently pled.

2) The Friedman & Shaftan Defendants

■■■ The Friedman & Shaftan defendants assert that plaintiffs' § 10(b) claim against them, contained almost entirely in paragraph 40 of the amended complaint, is insufficiently pled. The Court agrees. First, as to all the Friedman & Shaftan defendants, it is unclear where the misrepresentations attributed to the Friedman & Shaftan defendants appear. The amended complaint speaks of the "Private Placement Memoranda," but it unclear from the face of the amended complaint whether plaintiffs are referring to the body of the offering memoranda themselves, or to the tax opinion letter attached to the memoranda, prepared by Friedman & Shaftan. If plaintiffs are referring to the opinion letter, their amended complaint might well fail due to the clear language of the letter that opinions as to economic viability of the partnerships was based on representations from the general partner. However, the Court need not decide that issue at this time. The amended complaint as pled is insufficient as a matter of law.

Additionally, the amended complaint does not sufficiently plead a § 10(b) claim against the individual Friedman & Shaftan defendants. Plaintiffs have simply named the partners of Friedman & Shaftan as defendants without delineating each individual's role, if any, in the preparation of the allegedly fraudulent material. This is not sufficient. In order to impose liability on defendants as controlling persons, plaintiffs must aver that the defendants had actual knowledge of the alleged violations, or that defendants had a fiduciary relationship to plaintiffs and have acted recklessly. *Index Fund, Inc. v. Hagopian,* 609 F.Supp. 499 (S.D.N.Y.1985). Plaintiffs here have done neither. Accordingly, their pleading is insufficient as to the individual Friedman & Shaftan defendants.

3) Defendant World Information Systems

■■■ Defendant WIS alleges that plaintiffs' allegations against it are insufficiently pled. The Court disagrees. The amended complaint identifies WIS' role in the allegedly fraudulent scheme, and sufficiently alleges that WIS had knowledge of, or should have had knowledge of, the supposed falsehoods contained in its report. Amended Complaint ¶¶ 14–16, 18–20. The Court agrees with WIS that the amended complaint contains some contradictions regarding the extent of reliance on WIS' alleged misrepresentation, but for the purpose of a motion to dismiss, the allegations are sufficiently alleged.

4) Defendant CNA

■■■ The Court finds the amended complaint insufficient as to defendant CNA. While Rule 9(b) does not require that knowledge be pled with the same particularity as the elements of the alleged fraud, courts in this Circuit have held that simple assertions of knowledge are insufficient. "[A]t this stage of the litigation, we cannot realistically expect plaintiffs to be able to plead defendants' actual knowledge. On the other hand, plaintiffs can be required to supply a factual basis for their conclusory allegations regarding that knowledge." *A.H. Robins, supra,* 607 F.2d at 558. This is particularly applicable in order to uphold Rule 9(b)'s purpose of avoiding conclusory allegations of fraud which might unduly harm the reputation of putative defendants. In the instant case, there is nothing in the amended complaint that indicates the

factual basis for plaintiffs' assertion that CNA had knowledge of the alleged falsity of the offering material that it distributed. While other defendants had direct connections with the offering memoranda and materials that make averment of knowledge acceptable under Rule 9(b), CNA had no connection to or involvement in preparation of those materials. Thus a simple conclusory allegation that CNA had knowledge of the alleged misrepresentations is insufficient. As knowledge has been insufficiently pled, plaintiffs § 10(b) claim against CNA must be dismissed.

### G) Defendants' Motion to Dismiss the RICO Claim

Defendants have argued that plaintiffs' RICO claim must be dismissed under Rules 9(b) and 12(b). The Court agrees. Since the filing of this motion, the Supreme Court has revisited civil RICO and has refined the requirements for a successful claim under the statute. *H.J. Inc. v. Northwestern Bell Telephone Co.,* — U.S. ——, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). The Court finds that plaintiffs' pleading cannot survive scrutiny under the *H.J. Inc.* standard, and must be dismissed without prejudice. Moreover, the Court finds that the RICO claim as pled does not meet the requirements of Rule 9(b).

■ In addition, the Second Circuit has recently considered the issue of the extent of the Rule 9(b) requirement on a RICO pleading. The Court requires that predicate actions resting on fraud be pled with particularity, but does not require the particularized pleading of the conspiracy itself. "Rule 9(b) applies only to fraud or mistake, not to conspiracy. [The] pleading of conspiracy, apart from the underlying acts of fraud, is properly measured under the more liberal requirements of Rule 8(a)." *Hecht v. Commerce Clearing House, Inc.,* 897 F.2d 21, 26 (2d Cir.1990). *See also Rose v. Bartle,* 871 F.2d 331, 336 (3rd Cir.

1989); *Andreo v. Friedlander, Gaines, Cohen, Rosenthal & Rosenberg,* 660 F.Supp. 1362, 1372 (D.Conn.1987).

■ Plaintiffs have attempted to plead only two types of predicate acts to undergird their RICO claim. First, plaintiffs have asserted a violation of § 10(b) by the various defendants. The sufficiency of that pleading is discussed, *supra.*[8] Second, plaintiffs assert that defendants have committed acts of mail fraud. Plaintiffs allege that, "[t]he uses of the mail included, but were not limited to, transmittal of the private placement memoranda and other reports noted hereinabove to the plaintiffs between 1983 and 1986." Amended Complaint ¶ 60. "In alleging mail fraud, the plaintiff must set forth the contents of the items mailed and specify how each of the items was false and misleading." *Official Publications, Inc. v. Kable New Co., Inc.,* 692 F.Supp. 239, 245 (S.D.N.Y.1988), *aff'd in part, rev'd in part,* 884 F.2d 664 (2d Cir.1989). This requirement of particularity in mail fraud pleadings does not require a plaintiff to plead every date and place of mailing, particularly where such knowledge would be in possession of defendants. But it does require that the documents involved be pled with particularity, and, where there are multiple defendants, that connections be made between the various defendants and the alleged acts of mail fraud.

■ In the instant case, plaintiffs' mail fraud pleading is insufficient. While plaintiffs' allegation of the mailing of the purportedly misleading offering memoranda is clear, plaintiffs' reference to "other reports noted hereinabove … between 1983 and 1986" is patently insufficient. Plaintiffs' pleading implies that false reports were transmitted to plaintiffs up until the date this action was commenced. Amended Complaint ¶ 43. There is nothing to indicate that mailings of any kind ceased in 1986. Further, no where in the pleading is

**8.** Plaintiffs also appear to allege violations of §§ 15 and 17 of the Securities Act of 1933 and § 20 of the Securities Exchange Act of 1934. As discussed, *supra,* this Court has found that there is no private right of action under § 17, and thus it cannot serve as a predicate act. Further, plaintiffs appear to allege violations of § 15 of the Securities Act of 1933 and § 20 of the 1934 Act as predicate acts. There has been no explicit pleading of either a § 15 or § 20 claim, and thus they cannot serve as predicate acts.

there any delineation of what materials other than the offering memoranda and supporting reports were mailed to plaintiffs, particularly after 1983. Plaintiffs allege that these false materials were mailed to them. Thus, plaintiffs' implied allegation that the knowledge of which documents were mailed is uniquely in the possession of defendants is not well taken. Plaintiffs must identify which allegedly fraudulent documents, other than the offering memoranda, were mailed to plaintiffs.

Further, where there are multiple defendants, plaintiffs must identify with particularity the roles of the individual defendants in the mail fraud. The lumping together of the defendants in the instant amended complaint is confusing as well as insufficient. For example, it is unclear what, if any, contact the Friedman & Shaftan defendants had with plaintiffs after the distribution of the offering memoranda and the tax opinion letter. Yet read literally, plaintiffs' pleading states that *all* defendants mailed misleading materials during the entire period of 1983 to 1986. It is just this sort of uncertainty in pleadings of fraud claims that Rule 9(b) was designed to prevent. Accordingly, plaintiffs' mail fraud claim as underlying the formal RICO claim is dismissed pursuant to Rule 9(b).

▮ Plaintiffs' pleading must also be examined in light of the Supreme Court's ruling in *H.J. Inc.* A threshold issue for the Court is whether plaintiffs have sufficiently pled the existence of a RICO enterprise. The statute defines "enterprise" as "[A]ny individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact though not a legal entity." 18 U.S.C. § 1961(4). " '[An] enterprise is an entity, for present purposes a group of persons associated together for a common purpose of engaging in a course of conduct.' " *United States v. Indelicato*, 865 F.2d 1370, 1376 (2d Cir.), *cert. denied sub nom. Furnari v. United States*, — U.S. —, 109 S.Ct. 3192, 105 L.Ed.2d 700 (1989), *quoting United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524, 2528, 69 L.Ed.2d 246 (1981). Reading the amended complaint in

the light most favorable to plaintiffs, it is apparent that they have sufficiently pled the existence of an association-in-fact enterprise.

▮ Having found that there is an enterprise, the Court next turns to the question of the existence of a pattern of racketeering. The Court is guided both by *H.J. Inc.* and the Second Circuit's recent ruling in *Beauford v. Helmsley*, 865 F.2d 1386 (2d Cir.) *vacated and remanded*, 109 S.Ct. 3236 (1989), *reaff'd by order dated Sept. 15, 1989* (2d Cir.), *cert. denied*, — U.S. —, 110 S.Ct. 539, 107 L.Ed.2d 537 (1989). The Supreme Court found that the definition of a RICO pattern has two elements: relationship and continuity. "[T]o prove a pattern of racketeering activity a plaintiff … must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *H.J. Inc.*, 109 S.Ct. at 2900 (emphasis in original).

The requirement of relationship among predicate acts is intended to limit the broad reach of the RICO statute. "Congress's goal in fashioning its definition of 'pattern of racketeering' was to exclude from the reach of RICO criminal actions that were merely 'isolated' or 'sporadic.' " *Beauford, supra*, 865 F.2d at 1391. But this does not mean that the term relationship should be read too narrowly. "[A] RICO pattern may be established without proof of multiple schemes, multiple episodes, or multiple transactions; and [ ] acts that are not widely separated in time or space may nonetheless properly be viewed as separate acts of racketeering activity for purposes of establishing a RICO pattern." *Id.* The Supreme Court stated, " '[C]riminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.' " *H.J. Inc.*, 109 S.Ct. at 2901.

Assuming that the predicate acts had been sufficiently pled, plaintiffs would have alleged multiple acts of securities and mail fraud. These alleged acts all involve

the distribution of materials related to the partnerships and the sale of interests in those partnerships to plaintiffs. The partnerships all related to the same underlying transactions which plaintiffs allege were fraudulent. Accordingly, the Court finds that plaintiffs have sufficiently pled relationship.

The more difficult question is whether plaintiffs have sufficiently pled continuity. The concept of continuity has proven to be the most indistinct of all the interpretations given to the statutory frame of RICO by the courts. Justice Blackmun, writing for the Court, addressed the definition of continuity in a RICO enterprise in detail in *H.J. Inc.*, indicating that the term should be read broadly.

> "Continuity" is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition.... A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct. Often a RICO action will be brought before continuity can be established in this way. In such cases, liability depends on whether the *threat* of continuity is demonstrated.

109 S.Ct. at 2902 (emphasis in original) (citations omitted).

■ Just as Justice Blackmun indicates that "continuity" should not be defined narrowly, Justice Blackmun's own efforts to provide guidance should not be given too constricted a reading or be read in isolation. Thus, a court should not merely look at the duration of the enterprise and activities alleged, check that against the time periods outlined by the Supreme Court, and decide whether community exists. The determination of the existence or non-existence of continuity requires the court to look beyond the bare enterprise and predicate acts. It is necessary for the court to examine the "overall context in which the acts took place" in order to ascertain whether sufficient continuity exists. *United States v. Kaplan*, 886 F.2d 536, 542 (2d Cir.1989), *cert. denied,* — U.S. ——, 110 S.Ct. 1127, 107 L.Ed.2d 1033 (1990); *Procter & Gamble v. Big Apple Industrial Buildings, Inc.*, 879 F.2d 10, 17 (2d Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 723, 107 L.Ed.2d 743 (1990); *Amsler v. Corwin Petroleum Corp.*, 715 F.Supp. 103, 104 (S.D.N.Y.1989). *See Beauford, supra,* 865 F.2d at 1391.

In the instant case, the Court finds that continuity has been sufficiently alleged as to defendants Friedman & Shaftan, Worldco, Aquanetics, Hachadoorian, Finesod and Mitchell Petroleum. The amended complaint as a whole clearly alleges that these defendants acted in concert to the detriment of plaintiffs over a period of years, and plaintiffs further allege that these same defendants undertook similar actions prior to the creation of the instant partnerships, and that fraudulent activity has continued through the alleged enterprise to the current date. However, plaintiffs have not sufficiently alleged continuity as to the other defendants. It is impossible to determine from the face of the complaint what, if any role, the remaining defendants had in the alleged racketeering activity beyond the creation and distribution of the offering materials, an event which occurred at best over a few months and which has long since ceased. Accordingly, the RICO claims against the remaining defendants must be dismissed for failure to plead continuity.

Defendants have also challenged plaintiffs' RICO claim as untimely under the applicable statute of limitation. In *Agency Holding Corp. v. Malley–Duff & Associates, Inc.*, 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987), the Supreme Court set a uniform federal statute of limitation for civil RICO actions of four years. However, the Supreme Court in *Malley–Duff* explicitly declined to decide when a civil RICO cause of action is deemed to accrue. The various circuit courts have addressed this issue since. In *Bankers Trust Co. v.*

*Rhoades,* 859 F.2d 1096 (2d Cir.1988), *cert. denied,* — U.S. ——, 109 S.Ct. 1642, 1643, 104 L.Ed.2d 158 (1989), the Second Circuit explored the question of the accrual of civil RICO claims in some depth. The Court held that "each time a plaintiff suffers an injury caused by a violation of 18 U.S.C. § 1962, a cause of action to recover damages based on that injury accrues to plaintiff at the time he discovered or should have discovered that injury." *Id.* at 1102.

■■■ The focus of accrual in a RICO action is different from that for a fraud claim where the focus is on the acts of defendants. In a RICO action, the focus is on the injury to plaintiff. Indeed, a plaintiff may not recover under RICO until he or she has been injured as a result of the alleged racketeering activity. Thus, "[u]ntil such injury occurs, there is no right to sue for damages under § 1964(c), and until there is a right to sue under § 1964(c), a civil RICO action cannot be said to have accrued." *Id.* Thus, it is the injury, not the racketeering activity which triggers the statute of limitation for a RICO action.

In this case, plaintiffs cannot be said to have learned of their injury, the loss of their investment and any possible benefits from that investment, until 1986, when the Internal Revenue Service disallowed their tax deductions. Thus, plaintiffs' RICO claim cannot be said to be time barred. This is not inconsistent with the Court's finding above that plaintiffs' securities law claim accrued at the time of purchase. The statute of limitation for the securities law violation focuses on plaintiffs' knowledge of defendants' actions, while the RICO statute of limitation focuses on plaintiffs' knowledge of when they were actually harmed by those actions.

■■■ Despite the fact the plaintiffs' RICO claim was filed in a timely fashion, it must nonetheless be dismissed. The only predicate act surviving scrutiny under Rules 9(b) and 12(b) is a single § 10(b) claim of plaintiff Steven L. Ezzes against defendants WIS, Finesod, the partnerships,

and Mitchell Petroleum. Such is not sufficient to support a RICO claim.

## H) State Law Claims

Defendants maintain the plaintiffs' state law claims must be dismissed pursuant to Fed.R.Civ.P. 12(b)(1) due to the insufficiency of plaintiffs' federal law claims. Defendants are correct, in part. All federal claims have been dismissed above except plaintiff Steven L. Ezzes' § 10(b) claim against defendants WIS, Finesod, the partnerships, and Mitchell Petroleum. Thus, only the state law claims of plaintiff Steven L. Ezzes against defendants WIS, Finesod, the partnerships, and Mitchell Petroleum are cognizable by this Court. The only basis on which the state claims of all other plaintiffs could survive is under a theory of pendant party jurisdiction to plaintiff Ezzes' surviving claims. The Supreme Court has recently eliminated the type of pendant party jurisdiction that might be asserted in the instant case. *See Finley v. United States,* — U.S. ——, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989). *See also Rocco Carriers, Ltd. v. M/V Nurnberg Express,* 899 F.2d 1292 (2d Cir.1990). Thus, the state claims of all plaintiffs, other than those of plaintiff Ezzes, must be dismissed at this time for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).

## CONCLUSION

Defendants'[9] motions to dismiss plaintiffs' claims and for summary judgment are granted in part and denied in part.

Defendant CNA's motion for summary judgment as to all plaintiffs, except Joe K. George, Joe David House, M. Stephen Brandon, Thomas J. Welsh, George Sennett, and Edith Sennett, is granted.

Plaintiffs' claims against Petro–Tech Limited Partnership IV are dismissed with prejudice.

Plaintiffs' § 17(a) claim is dismissed with prejudice.

---

9. The Court again notes that defendant Heller, White is not represented in this motion. The Court takes no position at this time as to effect

of the above rulings on plaintiffs' claims against Heller, White.

· Plaintiffs' § 10(b) claims are dismissed without prejudice, as untimely and as insufficiently pled, except as to plaintiff Steven L. Ezzes' claim against defendants WIS, Finesod, the partnerships and Mitchell Petroleum.

Plaintiffs' RICO claim is dismissed without prejudice.

Plaintiffs' state law claims, except those of plaintiff Steven L. Ezzes against defendants WIS, Finesod, the partnerships, and Mitchell Petroleum, are dismissed without prejudice.

Leave to replead is granted.[10]

Plaintiffs' shall file a second amended complaint within 45 days of this order.

The parties are ordered to appear for a status conference on July 13, 1990 at 2:00 pm in Courtroom 36 of the United States Courthouse, New York, New York.

SO ORDERED.

---

**10.** The Court notes that, particularly in RICO actions, it has become an all too common practice for litigants granted leave to replead to make only minor changes in the original complaint based on an overly restrictive reading of the dismissing court's order, prompting a second motion to dismiss. An amended complaint which fails to replead with sufficient particulari- ty after a finding of lack of specificity may well be regarded by the Court as a frivolous filing in violation of Fed.R.Civ.P. 11. Conversely, a renewed Rule 9(b) motion after an adequate and thorough repleading can also be viewed as frivolous. *See, e.g., O'Malley v. New York City Transit Authority*, 896 F.2d 704 (2d Cir.1990).